United States Steel Corporation Tax Assessment Case.

Argued September 30, 1969.   Before Bell, C. J., Jones, Cohen, Eagen, O'Brien, Roberts and Pomeroy, JJ.

436

*Albert A. Sayers,* with him *Sayers, King & Keener,* for appellant.

*A. J. Marion,* for appellee.

OPINION BY MR. JUSTICE COHEN, January 9, 1970:

This is an appeal by the United States Steel Corporation (U.S. Steel) from an adjudication of the Court of Common Pleas of Greene County sustaining an assessment of coal lands made by the Greene County Board of Assessment and Revision of Taxes (Board). The coal lands, called the Cumberland Reserve Coal Tract (Cumberland), is being assessed at an average price of $74.00 per acre, that being 35% of the appraised market value of $214.00 per acre. Through expert testimony before the court below, U. S. Steel attempted to prove the coal lands had a market value of $116.00 per acre.

Before analyzing the particular facts of this case and the reasoning of the court below in sustaining the finding of the Board, it is necessary to state the procedure a court must follow when hearing such an appeal.

"The proceedings in the trial court are de novo and the proper order of proof in cases such as the present one has long been established. The procedure requires that the taxing authority first present its assessment record into evidence. Such presentation makes out a prima facie case for the validity of the assessment in the sense that it fixes the time when the burden of coming forward with evidence shifts to the taxpayer.

If the taxpayer fails to respond with credible, relevant evidence, then the taxing body prevails. But once the taxpayer produces sufficient proof to overcome its initially allotted status, the prima facie significance of the Board's assessment figure has served its procedural purpose, and its value as an evidentiary device is ended. . . . Of course, the taxpayer still carries the burden of persuading the court of the merits of his appeal, but that burden is not increased by the presence of the assessment record in evidence.

"Of course, the taxing authority always has the right to rebut the owner's evidence and in such a case the weight to be given to all the evidence is always for the court to determine. The taxing authority cannot, however, rely solely on its assessment record in the face of countervailing evidence unless it is willing to run the risk of having the owner's proof believed by the court. Where the taxpayer's testimony is relevant, credible and unrebutted, it must be given due weight and cannot be ignored by the court. It must necessarily be accepted." [Citations omitted]. *Deitch Company v. Board of Property Assessment*, 417 Pa. 213, 221-2, 209 A. 2d 397, 402 (1965); see, also, *F. W. Woolworth Tax Assessment Case*, 426 Pa. 583, 235 A. 2d 793 (1967).

Having established the procedural framework for such an appeal, it is necessary to determine whether that procedure was properly followed. The Board introduced its assessment record and after U. S. Steel had introduced its testimony the Board presented evidence in rebuttal. We start with an analysis of that rebuttal evidence for, if it is irrelevant, incompetent and immaterial as appellant contends, then appellant's evidence, if it is relevant, credible and unrebutted, must prevail. That rebuttal evidence (questioning the value of $116.00 per acre propounded by appellant) consisted of two certificates from the Office of the Recorder of

Deeds of Greene County showing that the Buckeye
Coal Company in March, 1959, purchased 18,500 acres
of coal land adjoining U. S. Steel's tract. The purpose
of this was to prove from the number and amount of
State and Federal documentary stamps affixed to the
deeds the price paid per acre and thus shed light on
the market value of land comparable to that of appel-
lant's. Neither of the deeds showed any money consid-
eration, but on the basis of the stamps the court below
found that the market value per acre was $677.00 for
one tract and $609.00 for the other. The lower court's
conclusions of law show clearly that it relied heavily on
this evidence:

"The testimony of an expert witness is not suffi-
cient to rebut the presumption of the correctness of
the Board's assessment, where it is shown that the
Board based its figures upon reasonably sound data
. . . which figures are later proven by sales in the neigh-
borhood and by the general conditions in the industry
. . . ."

We agree with appellant that showing the number
of tax stamps on a deed is not sufficient evidence of
the price actually paid for the land. It is true that
the Act of December 27, 1951, P. L. 1742, §3, as amend-
ed by the Act of June 1, 1955, P. L. 128, §1, 72 P.S.
§3285, requires the payment of a tax at the rate of one
per cent of the value of the property represented by
such document, but nothing prevents (and the state
has no interest in) the affixation of more stamps than
represent the actual price paid. The parties, for their
own purposes, may decide to purchase and affix more
stamps than the law requires, and thus the number of
stamps gives no meaningful evidence as to the true
purchase price. Also, the land is to be assessed at its
actual value. "The term actual value means the mar-
ket value and market value has been defined as a price
which a purchaser, willing but not obliged to buy, would

pay an owner willing, but not obliged to sell. . . ."
*Deitch,* supra at 217. Just proving the number and
amount of stamps on the document is no evidence that
both the buyer and seller were willing to deal but not
obliged to.

The other rebuttal evidence consisted of the court's
taking judicial notice of the fact that the demand for
coal had increased in that area. This, however, is no
evidence of the specific value of appellant's land.

Having, therefore, determined that the Board's re-
buttal testimony was, in part, irrelevant and generally
of little weight, it is necessary to examine the quantity
and quality of the evidence introduced by U. S. Steel.
Appellant called several experts who testified as to
the amount of coal present, the probable demand for it,
the uses to which it could be put and the costs of
mining it. Their conclusion was that the present mar-
ket value was $116.00. What creates some difficulty
with this testimony is the use of land in Wetzel Coun-
ty, West Virginia for the purpose of establishing a
value for the Greene County coal. It appears from the
testimony of R. L. Frantz that appellant's experts used
the price paid for the West Virginia land as the meas-
ure of comparison for valuing the land in question.

What creates the difficulty is the use made of this
testimony by the court. In its first opinion, the lower
court, citing *Glen Alden Coal Company v. Commission-
ers of Schuylkill County,* 345 Pa. 159, 27 A. 2d 239
(1942), seems to have felt this Court created distinct
categories of evidence and that it could not consider
one category if anything in a more preferable category
existed. The court said:

"We do not discount the meticulous care utilized by
Mr. Boyd in the preparation of this report or the quali-
fications he brings to the task he was assigned. But
in the application of the reasoning required of us by
the Glen Alden case, supra, absent any testimony fall-

ing within the purview of the first category, the next best evidence is that of recent sales, and here the most recent and best evidence, in our opinion, is found in the two deeds to Buckeye Coal Company. . . ."

However, in its opinion overruling appellant's exceptions, the lower court stated:

"Our reason, though, for disregarding the sale value of the coal lands in Wetzel County was not because of a belief in its incompetency, but rather because of our finding that it is not similarly situated, and therefore not relevant."

Thus, it is not clear whether the court below gave little weight to appellant's testimony because it felt it was legally obligated to prefer evidence of recent sales of nearby land, or because it felt the basis as to value underlying that testimony was irrelevant. Hence, it is necessary to remand the record for a new hearing at which the lower court must consider all evidence it considers credible and relevant.

The decree is vacated and the record is remanded for proceedings consistent with this opinion.

Mr. Chief Justice BELL and Mr. Justice JONES concur in the result.