Wallingford-Swarthmore School District and
Borough of Swarthmore Tax Appeals.

Argued October 2, 1972, before President Judge
BOWMAN and Judges CRUMLISH, JR., KRAMER, WILKIN-
SON, JR., MENCER, ROGERS and BLATT.

*F. Martin Duus,* for appellant, Wallingford-Swarthmore School District.

*Clarence G. Myers,* for appellant, Borough of Swarthmore.

*Ralph B. D'Iorio,* with him *Cramp, D'Iorio, McConchie and Surrick,* for appellee, Wildman Arms, Inc.

OPINION BY PRESIDENT JUDGE BOWMAN, December 27, 1972:

The dissatisfaction of two local taxing districts with a series of interim assessments made by the Delaware County Board of Assessment Appeals against an apartment house-hotel complex under construction prompted the litigation now before us on appeal from the trial court's determination of the "right and proper" interim assessments in question. Act of June 26, 1931, P. L. 1379, Section 9, as amended, 72 P.S. §5350.

Our scope of review in this class of appeals is limited. The trial court will be affirmed if it has considered all relevant factors, has not abused its power and has not made an error of law. *Wynne, Inc. Tax Assessment Case,* 434 Pa. 59, 253 A. 2d 632 (1969) ; *Pittsburgh Miracle Mile Town and Country Shopping Center, Inc., Tax Appeals,* 6 Pa. Commonwealth Ct. 187, 294 A. 2d 226 (1972). Unfortunately, as to these consolidated appeals, the record before us on appeal makes it impossible for us to perform our responsibilities, and we must remand.

While it is not clear when the requests were made nor the procedure then followed, the Wallingford-Swarthmore School District and the Borough of Swarthmore, appellants here, did request the Delaware

County Board of Assessment Appeals to make interim assessments against an apartment house-hotel complex then under construction.[1]

From the briefs in these appeals before this Court we learn that prior to commencement of the construction of the apartment house-hotel complex in question, the land, then vacant, was assessed at a $13,100 valuation.[2] As a result of the requests of these taxing bodies, interim assessments as of January 1, 1970, April 1, 1970, and July 1, 1970, were made against the property in the amount of $100,000 and as of January 1, 1971, in the amount of $800,000. The property owner appealed to the Board from the interim assessments of January 1, 1970, April 1, 1970, and January 1, 1971. As to the first two, the Board reduced the assessment to the prior assessed value of the land alone of $13,100 and as to the January 1, 1971, interim assessment reduced it from $800,000 to $600,000. An appeal to the Board by the taxing districts from the interim assessment as of July 1, 1970, was never disposed of by the Board. It would also appear that the Board heard and disposed of the property owner's appeals without the knowledge of or notice to the taxing districts, which learned of the reduced interim assessments sometime afterward. *See* Section 8, Act of 1931, 72 P.S. §5349.

These reductions of previously made interim assessments prompted appeals to court by the school district in which the borough then intervened.

---

[1] Section 677.1 of the Public School Code of 1949, Act of March 10, 1949, P. L. 30, art. VI, as amended, 24 P.S. §6-677.1, and Section 1306 of the Borough Code, Act of February 1, 1966, P. L. 1656 (1965), as amended, 53 P.S. §46306, authorize these taxing bodies to request the interim assessment by the appropriate assessorial authority of certain property under construction subject to the right of appeal and adjustment as otherwise provided with respect to assessments generally.

[2] The property owner also testified to this fact during the course of his testimony at the evidentiary hearing.

The appeals were consolidated for trial. At hearing, counsel for the parties and the property owner stipulated that the trial court should also consider as on appeal and dispose of the July 1, 1970, interim assessment of $100,000 which was on appeal to, but not disposed of by, the Board as noted above. The evidentiary record of the hearing before the trial court consists only of the testimony of an expert witness for the taxing districts and that of the sole stockholder of the property owner. Although represented by counsel, the Board did not offer into evidence its interim assessments in question nor otherwise participate in the trial. So far as we can learn from the record and briefs, the Board, at this point, abandoned its responsibilities and was content to let the matter proceed as a dispute between the taxing districts and the property owner.[3]

In fixing the contested interim assessments as it deemed them to be right and proper, the trial court made no specific findings of fact which would aid us in reviewing its determination. Apparently, the testimony of the expert for the taxing districts as to fair market value as of January 1, 1971, based upon the income approach was totally rejected by the trial court, which characterized the same as inconsistent and self-contradictory. As to his opinion of fair market value on the interim dates of January 1, 1970, April 1, 1970, and July 1, 1970, based upon percentage of completion as measured by costs of construction, the trial court rejected this testimony declaring it to be the equivalent of using depreciated reproduction costs as a method of assessment; this has been disapproved by our Supreme Court, citing *Pennsylvania's Northern Lights Shoppers City, Inc. Appeal,* 419 Pa. 31, 213 A. 2d 268 (1965).

---

[3] Similarly, the Board as appellee before this Court neither appeared for argument nor filed a brief.

Having thus rejected the opinion testimony of this witness and without discussing the testimony of the property owner, the trial court simply affirmed the Board's valuations on the interim assessment dates with a major adjustment of the interim assessment of January 1, 1971. As to this particular assessment, the trial court found the fair market value on that date to be $898,566. This would produce an assessed value of $200,380 instead of $600,000 as fixed by the Board after the property owner's appeal to it. How the trial court reached this figure is not set forth in its opinion nor are its reasons for doing so.

Presumably, it is based upon the testimony of the sole stockholder of the owner of the apartment house-hotel complex under construction. The record discloses that he fixed the fair market value of the property as of January 1, 1971, to be $898,560. In reaching this valuation, the witness, using the income method, employed gross rentals of the property as of that date, projected on an annual basis reduced by a 4% fee due a mortgagee (measured by actual gross rents received) and an allowance of 50% of gross rentals for operating expenses. The net figure so determined was then capitalized at 10% to arrive at fair market value as of that date.

If the trial court considered the method and calculations employed by this witness in reaching his opinion as to fair market value to be proper and reasonable, we are not told so. Nor, under the circumstances, can we determine whether the trial court concluded as a matter of law that for interim assessment purposes an income method based upon *actual* gross income of a building partially completed with the further adjustments as made by the witness is a proper method of assessment. We can only speculate.

Accordingly, these appeals must be remanded and reluctantly ordered for a new trial. In such a retrial

we commend to the trial court and the parties the trial procedure delineated by the Supreme Court in *May Department Stores Company v. Allegheny County Board of Property Assessment, Appeals and Review,* 441 Pa. 556, 272 A. 2d 862 (1971), and in *United States Steel Corporation Tax Assessment Case,* 436 Pa. 435, 260 A. 2d 779 (1970), and, as to fair market value of property under construction for interim assessment purposes, the Supreme Court's decision in *Madway v. Board for the Assessment and Revision of Taxes,* 427 Pa. 138, 233 A. 2d 273 (1967), in which it declared: "No matter how an interim assessment statute is drafted, the property can be reassessed only when its value has increased. Accordingly, there must be some way to tell *when* it is worth more, and how much more it is worth. It would not only be unworkable as a practical matter to force an assessor to keep detailed records of all conditions that might affect the market value of a piece of land, but, ironically, were such a task dictated by our constitution as a prerequisite for an interim assessment, the vagueness and guesswork involved in *that* system would likely spawn the very untrammeled discretion that appellants fear. As a result, the Legislature has wisely directed that interim assessments be based on a barometer of increased value that is not only easy to read, but is also likely to give an accurate and fair measurement: the presence of physical improvements on the property. The basic interim assessment law does not classify real estate. It merely sets up a scale on which property is to be valued. No class is favored; and all real estate is subject to the same interim assessment statute provided its value increases on the measuring scale set up by the Legislature." 427 Pa. at 147-8, 233 A. 2d at 278.

The orders of the lower court are reversed and the appeals are remanded for new trial.