Commonwealth of Pennsylvania, Department of Environmental Resources and Commonwealth of Pennsylvania, Department of Transportation *v.* Precision Tube Co., Inc., Appellant.

648

Argued March 2, 1976, before President Judge Bow-MAN and Judges CRUMLISH, JR., WILKINSON, JR., MENCER, ROGERS and BLATT. Judge KRAMER did not participate.

*Michael Sklaroff,* with him *Peter R. Pinney, James D. Crawford, J. Pennington Straus,* and, of counsel, *Schnader, Harrison, Segal & Lewis,* for appellant.

*Maxine Woelfling,* Assistant Attorney General, for appellee.

*John M. Hrubovcak,* Assistant Attorney General, with him *Gregory S. Ghen,* Assistant Attorney General, *Robert W. Cunliffe,* Deputy Attorney General, and *Robert P. Kane,* Attorney General, for intervening appellee.

OPINION BY JUDGE CRUMLISH, JR., May 28, 1976:

Precision Tube Co., Inc. (Appellant) appeals to us from an adjudication of the Environmental Hearing Board (Board). The Department of Environmental Resources (DER) granted two water obstruction permits to the Pennsylvania Department of Transportation (PennDOT) for the construction of culverts for a highway crossing over the Wissahickon Creek (Creek).

Although it did not overturn the original permits, the Board prohibited PennDOT from proceeding with any construction which did not conform to the plans approved in the original permits and remanded the matter to DER to consider PennDOT's proposed amendments to the permits.

The permits involved were issued to PennDOT in 1971 to construct stream crossings for the North Penn Expressway in Montgomery County. Permit DH 14159 authorized construction of a bridge over the Creek in Upper Gwynedd Township. Permit DH 14153 authorized the construction of culverts and channel changes in the Creek. Both permits specified that PennDOT must comply with criteria established by the then Water and Power Resources Board for the control of erosion and water pollution. It is the latter permit (Permit DH 14153) with which we are concerned in this appeal.

The specifications for the culverts as originally proposed by PennDOT in its permit application called for two box-type reinforced concrete culverts each with an opening of 16 feet by 10 feet. The lengths of the proposed culverts were to be 60 feet and 400 feet. The permit was granted based upon these specifications. Although PennDOT has apparently made no effort to modify the permit, it now plans to construct the culverts in such a way that their lengths will be 82 feet and 413 feet, respectively.

PennDOT's plans also call for pipes which will carry storm water runoff from the proposed highway into the

Creek. No permits have been obtained for these discharge pipes.

PennDOT has devised an erosion control plan designed to halt erosion under the topsoil and at culvert outlets.

Appellant's place of business is along the Creek at a point near where the proposed expressway will cross.

Appellant raised several challenges to both the proposed construction and to the original permits. After conducting extensive hearings the Board, on August 29, 1975, issued an adjudication and order remanding the matter to DER. Appellant has taken the position that the Board should have revoked the original permits rather than remand the matter to DER.

Section 2 of the Water Obstruction Law[1], 32 P.S. §682, makes it unlawful to erect a water obstruction without a permit from the Water and Power Resources Board (now DER). Section 3, 32 P.S. §683, requires permit applications to be accompanied by complete maps, plans, profiles and specifications of proposed water obstructions. Section 4, 32 P.S. §684, makes it unlawful to construct an obstruction except in accordance with the terms and conditions of the permit. Appellant contends that since the construction actually proposed by PennDOT differs from the plans originally submitted with the permit application, the Board should have revoked the permits rather than remand the matter to DER. Appellant has cited no authority to support this proposition and our examination of the record leads us to conclude that it is without merit.

The Board recognized that neither the proposed obstructions nor the proposed changes in the course of the Creek were authorized by the existing permits.[2] The

---

1. Act of June 25, 1913, P.L. 555, *as amended*, 32 P.S. §681 et seq.

2. Page 15 of the Board's adjudication.

Board correctly observed that any design changes must be submitted to DER for approval by means of a request for permit amendment. The Board also directed that until such a request is made and acted upon, no work would be permitted except that specifically authorized by the existing permits.[3] In our view, it was entirely proper for the Board to have remanded the case to DER under these circumstances.

Appellant next contends that the Board should have revoked the permits because PennDOT failed to prove, and the Board failed to make a finding, that the obstructions would not cause flooding hazard.

In its adjudication, the Board found as a fact that:

"47. The obstructions were designed initially in 1971 for a 50 year flood frequency; a preferred flood frequency today for design purposes is 100 years."

The Board also noted that, based upon the figures and methodology employed by one of Appellant's experts, a 1974 study submitted by PennDOT to DER seriously underestimated the actual flood magnitude of the Creek.

We remind Appellant that while the instant appeal technically does not concern the propriety of the granting of the original permits, we may not substitute judicial discretion for administrative discretion in matters involving technical expertise. *East Pennsboro Township Authority v. Commonwealth of Pennsylvania, Department of Environmental Resources*, 18 Pa. Commonwealth Ct. 58, 334 A.2d 798 (1975). Accordingly, it is not appropriate for this Court to adjudicate as to the adequacy of PennDOT's flood control plan when the entire matter is being remanded to DER. DER has the technical expertise with which to analyze potential flood hazard in light of the Board's findings as to preferred flood frequency.

---

3. Page 17 of the Board's adjudication.

Appellant also contends that the Commonwealth has the burden to prove that proposed actions affecting the environment meet the tests outlined in *Payne v. Kassab,* 11 Pa. Commonwealth Ct. 14, 312 A.2d 86 (1973), for compliance with the environmental protection provision of the Pennsylvania Constitution.

Article I, Section 27 of the Pennsylvania Constitution provides:

"§27.   Natural resouces and the public estate

The people have a right to clear air, pure water, and to the preservation of the natural, scenic, historic and esthetic values of the environment. Pennsylvania's public natural resources are the common property of all the people, including generations yet to come. As trustee of these resources, the Commonwealth shall conserve and maintain them for the benefit of all the people."

In *Payne* we announced a threefold test for striking a balance between the environmental and social concerns mandated by Article I, Section 27:

"(1)   Was there compliance with all applicable statutes and regulations relevant to the protection of the Commonwealth's public natural resources? (2) Does the record demonstrate a reasonable effort to reduce the environmental incursion to a minimum? (3) Does the environmental harm which will result from the challenged decision or action so clearly outweigh the benefits to be derived therefrom that to proceed further would be an abuse of discretion?" 11 Pa. Commonwealth Ct. at 29-30, 312 A.2d at 94.

Appellant is correct when it argues that DER must evaluate the proposed construction of the expressway cross-over in accordance with the *Payne* tests and that PennDOT has the burden of proving compliance therewith. *Commonwealth of Pennsylvania, Department of Environmental Resources v. Commonwealth of Pennsylvania, Public Utility Commission,* 18 Pa. Commonwealth

Ct. 558, 335 A.2d 860 (1975). However, Article I, Section 27, does not expand the statutory power of DER in passing on permit applications to require it to consider additional criteria. *Community College of Delaware County v. Fox*, 20 Pa. Commonwealth Ct. 335, 342 A.2d 468 (1975). The voluminous record in this case suggests that both PennDOT and DER have undertaken numerous studies and have evaluated the reports of eminent experts on such matters as: the potential flooding from future development and urbanization of the area resulting from the proposed expressway; and a sedimentation and erosion control plan approved by the Soil Conservation Service; etc. Furthermore, a community environmental group had the opportunity to voice objections and suggestions. In our view, these measures and others found in the record were designed to reduce environmental incursion to a minimum. Although the proposed construction of culverts in the Creek and the alteration of portions of the natural channel of the Creek will necessarily involve some harm to the natural and scenic area which currently exists, DER abuses its discretion in permitting the construction only when the environmental harm so clearly outweighs the benefits to be derived from the proposed construction. Our examination of the lengthy record in this case reveals no such abuse of discretion.

Finally, Appellant contends that both The Clean Streams Law[4] and the Federal Water Pollution Control Act[5] require permits for the outfall structures included in PennDOT's plans which will carry storm water with highway residue into the Creek.

As to the Federal law, neither the Board's jurisdiction nor that of DER allows enforcement of Federal

4. Act of June 22, 1937, P.L. 1987, *as amended*, 35 P.S. §691.1 et seq.

5. Act of October 18, 1972, P.L. 92-500, 86 Stat. 816, 33 U.S.C. §1151 et seq. (1970).

environmental requirements absent specific legislative mandate. Appellant cites no such legislative mandate and our research has failed to uncover any.

As to The Clean Streams Law, we note that the act contains permit requirements for specific types of pollution[6], none of which include storm water runoff. However, Sections 401 and 402[7] are catchall sections proscribing the discharge of "any substance of any kind or character resulting in pollution." Section 402, 35 P.S. §691. 402, grants the discretionary power to DER to issue regulations and require permits for the discharge of all such miscellaneous pollutants. Although DER has, by regulation, included storm water runoff as a source of potential pollution in specific types of discharge which it regulates[8], we are unable to find any authority whereby DER has exercised its *discretionary* power to require permits for storm water runoff from highway projects.

Finally, Appellant raises several objections to the notice and hearing procedures employed by PennDOT and DER. We summarily dismiss these objections because our examination of the record satisfies us that they are without merit.

We therefore

ORDER

AND NOW, this 28th day of May, 1976, the order of the Environmental Hearing Board dated August 29, 1975, Docket No. 74-271-W, is hereby affirmed.

---

6. Section 201-213 of The Clean Streams Law, 35 P.S. §§691. 201-213, deal with sewage; Sections 301-314, 35 P.S. §§691. 301-314, deal with industrial waste and discharge from mine operations.

7. These sections were changed to their current form by Section 14 of the Act of July 31, 1970, P.L. 653, No. 222.

8. *E.g.*, underground disposal of industrial wastes, 25 Pa. Code §97.71; diversion of surface water in strip mining operations, 25 Pa. Code §99.37.