Bethlehem Steel Corporation *v.* Commonwealth of Pennsylvania, Department of Environmental Resources, Respondent.

480

Argued June 7, 1978, before President Judge Bow-
man and Judges Crumlish, Jr., Wilkinson, Jr., Men-
cer, Rogers, Blatt and DiSalle.

*Albert J. Tomalis, Jr.,* with him *Keefer, Wood, Allen and Rahal,* for petitioner.

*Eugene E. Dice,* Assistant Attorney General, for respondent.

OPINION BY PRESIDENT JUDGE BOWMAN, September 6, 1978:

On September 19, 1972, petitioner, Bethlehem Steel Corporation (Bethlehem), applied to the Department of Environmental Resources (DER) for a variance pursuant to 25 Pa. Code §141.2 et seq. from regulations promulgated pursuant to the Air Pollution Control Act (APCA), Act of January 8, 1960, P.L. (1959) 2119, *as amended,* 35 P.S. §4001 et seq., relating to emissions from draw furnaces operated at its plant in Steelton, Dauphin County.[1] *See* 25 Pa. Code §123. 41 et seq. The application stated specifically that the rate of emissions was, at that time, unknown. *See generally Department of Environmental Resources v. Locust Point Quarries, Inc.,* 27 Pa. Commonwealth Ct. 270, 367 A.2d 392 (1976) (allocatur granted). The variance sought was an extension of time to September 15, 1975, in which Bethlehem proposed to have installed, over the furnace ports, hoods and thermal afterburners to consume the "oily smoke" produced by said furnaces.

On September 24, 1973, DER granted Bethlehem a variance until May 22, 1975, by which time Bethle-

---

[1] 25 Pa. Code §141.2(a) provides: "The Department [*i.e.,* DER] may grant temporary variances from any standard or requirement set forth in this Article upon the petition of the owners or operators of the air contamination sources for which such variances are sought."

hem would be required to implement the pollution control plan set forth in its application and to operate its furnaces in compliance with regulations. DER also imposed upon the variance other conditions not here relevant.[2]

No appeal was taken by Bethlehem from this order.

During October, 1973, Bethlehem completed tests on the emissions from its draw furnaces—the so-called "Rossnagle" test—the results of which became available during December, 1973.

On November 19, 1974, DER issued what it denominated as a "Clarification of [25 Pa. Code] §123.1 —Prohibition of Certain Fugitive Emissions."[3] The pertinent portions of Section 123.1 are as follows:

> (a) No person shall cause, suffer, or permit the emission into the outdoor atmosphere of any fugitive air contaminant from any source other than the following:

> .. . . .

> (9) Other sources and classes of sources determined by [DER] to be of minor signifi-

---

[2] DER's power to impose conditions on the granting of a variance is contained in Section 13.5 of the APCA, added by the Act of October 26, 1972, P.L. 989, 35 P.S. §4013.5, and 25 Pa. Code §141.3. A subsequent amendment to the variance dated November 14, 1973, is not of particular relevance, except insofar as DER argues before us that the variance order was final and beyond its power to amend. Of more significance, although in light of our disposition of these proceedings not meriting further discussion, is an order of DER dated August 22, 1974, withdrawing the variance order of September 24, 1973, as to quench tanks at the Steelton plant on the same basis upon which Bethlehem seeks an exemption for its draw furnace.

[3] "Fugitive air contaminant" is defined in 25 Pa. Code §121.1 as "[a]ny air contaminant emitted into the outdoor atmosphere in any manner other than through a flue."

cance with respect to the achievement and maintenance of ambient air quality standards or with respect to causing air pollution.

The "Clarification" provided, in part:

Section 123.1 has been mistakenly characterized as an absolute prohibition against certain fugitive emissions. This mistaken interpretation results from reading the initial operative language of subsection (a) of §123.1 in the absence of the exceptions (1) through (9).

. . . .

. . . [T]he regulation requires no control if it is concluded by [DER] that the source is of 'minor significance . . .' . . . .

This discussion makes it possible to succinctly state the intent of §123.1 . . . is to obtain a degree of control of fugitive emissions such that any remaining emission is of minor significance with respect to achievement and maintenance of ambient air quality standards or with respect to causing air pollution.

Armed with its "Rossnagle" test results and this "Clarification," which it believed to be a shift in DER policy from requiring total control to acknowledging the exception in Section 123.1(a)(9), Bethlehem, on November 21, 1974, applied to DER for an exemption pursuant to Section 123.1(a)(9) on the ground that the "Rossnagle" test results did indeed prove that the emissions from its draw furnaces were of "minor significance."

On December 20, 1974, DER, by letter, denied said application, stating:

The Department has not received any information that provides a basis for determining whether the test results obtained by Rossnagle Associates, Inc., is representative of maximum

emission rates for the interval sampled. However, assuming that maximum emissions from each rail and draw mill furnace is at least 7 lbs/hr., further information is not required to determine that the particulate discharge from these units is significant.

In view of the above, we are unable to find in your letter any tenable basis for withdrawing Order No. 73-757-V [*i.e.*, the September 24, 1973 variance order].

From this determination, on January 20, 1975, Bethlehem appealed to the Environmental Hearing Board (EHB).[4]

On March 21, 1975, while this appeal was pending, Bethlehem applied to DER for a renewal and extension until May 22, 1977, of the September 24, 1973 variance so as to allow the EHB to rule upon its appeal, interpret the "Clarification," and allow Bethlehem adequate time to design and install appropriate equipment should its appeal fail. By letter dated May 5, 1975, the application was denied. Bethlehem then took its second appeal to the EHB.

DER filed with the EHB a motion to quash Bethlehem's first appeal arguing that its refusal to grant an exemption pursuant to Section 123.1(a) was not an adjudication as per Section 2(a) of the Administrative Agency Law (AAL), Act of June 4, 1945, P.L. 1388, *as amended*, 71 P.S. §1710.2(a). DER also sought to characterize the appeal as an untimely appeal from the September 24, 1973 variance order.

Bethlehem answered arguing that under Section 1921-A of The Administrative Code of 1929 (Code), Act of April 9, 1929, P.L. 177, *as amended*, added by the Act of December 3, 1970, P.L. 834, 71 P.S. §510-

---

[4] Bethlehem's petition for supersedeas was denied on April 30, 1975. The record discloses no appeal from this denial.

21,[5] DER's action was a "decision" subject to review by the EHB. Bethlehem also argued that the "Clarification" of November 19, 1974, represented an interpretation of the regulation radically different from prior interpretations and those criteria applied to its variance petition and that, in effect, it was pursuing a right not previously in existence.

On March 31, 1975, the EHB denied DER's motion to quash.

On February 2, 1977, the EHB handed down its adjudication denying both of Bethlehem's appeals. After making findings of fact, the EHB, regarding Bethlehem's first appeal, said:

> The DER contends that the appeal is untimely, and previously raised this question by a motion to quash which was denied by the Board.[2] At a subsequent hearing on a petition for reargument on this jurisdictional question, the board denied the request without prejudice. . . .
>
> It is now evident that this appeal can only be upheld if the board overrules or ignores the decision of our Commonwealth Court in . . . Department of Environmental Resources v. Wheeling-Pittsburgh Steel Corporation, [22 Pa. Commonwealth Ct. 280], 348 A.2d 765 (1975), [aff'd and remanded, 473 Pa. 432, 375 A.2d 320 (1977)]. There the court said: '. . . We agree

---

[5] Section 1921-A(a), 71 P.S. §510-21(a), provides:

(a) The Environmental Hearing Board shall have the power and its duties shall be to hold hearings and issue adjudications under the provisions of the act of June 4, 1945 (P.L. 1388), known as the 'Administrative Agency Law,' on any order, permit, license or decision of the Department of Environmental Resources.

See also Section 6 of the APCA, 35 P.S. §4006, which speaks of the EHB having power to review "orders" of DER.

that an aggrieved party has no duty to appeal but disagree that upon failure to do so, the party so aggrieved preserves to some indefinite future time in some indefinite future proceedings the right to contest an unappealable order. To conclude otherwise, would postpone indefinitely the vitality of administrative orders and frustrate the orderly operation of administrative law ...' [*Id.* at 284, 348 A.2d at 767].

The key question is whether the 'clarification' ... changes any rights or obligations of ... Bethlehem. ... Although the answer to that question has been elusive insofar as the board is concerned ... it is clearly in the negative. ... [A] reading of the plain language [of the 'clarification'] reveals that it does not change, or purport to change the meaning or effect of ... §123.1 or the underlaying [sic] statute. ... In short, appellant was in the exact same legal position on December 20, 1975, [sic] when its request to the DER for a withdrawal of the order was denied, as it was on November 18, 1974, before the ' larification' [sic] was issued. ... The test of whether an action of the DER is appealable to this board within the meaning of §1921-A of the Administrative Code turns on whether the action '. . . effects [sic] personal or property rights. . . .' It is clear that the refusal of the DER on December 20, 1974, to withdraw a prior variance order ... did not change any rights of appellant. (Footnote and citations omitted.)

Relating to Bethlehem's second appeal from DER's denial of its application for renewal and extension

---

[2] At that time, the board acted in the mistaken believe [sic] that the 'clarification' in question, was an amendment to ... §123.1.

of the variance, the EHB said: "[W]e have no difficulty concluding, in light of the foregoing, that the denial was proper." The EHB then quoted 25 Pa. Code §141.11(b), which sets forth the required contents of a petition for variance and concluded: "This information was not provided."

These appeals followed. Bethlehem's appeal relating to its petition for an exemption pursuant to Section 123.1(a)(9) is docketed to No. 774 C.D. 1977. Its appeal from the denial of a renewal and extension of the original variance order is docketed to No. 773 C.D. 1977.

## No. 774 C.D. 1977

Initially, EHB's reliance upon *Wheeling-Pittsburgh, supra,* is misplaced. That case was an original jurisdiction proceedings in this Court seeking judicial enforcement of a DER order which had granted a variance to respondent but which order had not been complied with. By way of defense, the respondent sought to attack the DER regulation from which it had obtained a variance. If aggrieved by the DER variance order, we said the remedy was by way of appeal.

In contrast, Bethlehem, by entirely new proceedings before the DER is attempting to have applied to its Steelton operation a regulation not previously addressed by DER and which could not have been addressed because the rates of emission were concededly unknown when it originally sought and obtained a variance from a regulation that was thereafter at least arguably "clarified."[6]

We must next address the issue of whether DER's letter of December 20, 1974, is an appealable order, for,

---

[6] This should not be construed as acceptance by us of Bethlehem's argument on the merits or of its test procedures or results.

if not, these proceedings must be dismissed. *Department of Environmental Resources v. New Enterprise Stone & Lime Co.*, 25 Pa. Commonwealth Ct. 389, 359 A.2d 845 (1976).

Section 1921-A(c) of the Code, 71 P.S. §510-21(c), provides:

> (c) Anything in any law to the contrary notwithstanding, any action of the Department of Environmental Resources may be taken initially without regard to the Administrative Agency Law, but no such action of the department adversely affecting any person shall be final as to such person until such person has had the opportunity to appeal such action to the Environmental Hearing Board; provided, however, that any such action shall be final as to any person who has not perfected his appeal in the manner hereinafter specified.

It is important to note, first, that subsection (a), quoted *supra* note 5, distinguishes between adjudications as defined in Section 2(a) of the AAL, and "decisions," the latter being made specifically appealable to the EHB, and that subsection (c) specifically exempts DER actions from the mandates of the Administrative Agency Law. In *New Enterprise Stone & Lime Co., supra* at 393, 359 A.2d at 847, we said: "We note that, while the word 'decision' is not defined in the Code, administrative agency laws generally refer to the term 'decision', as including a determination which can be classified as quasi-judicial in nature and which affects rights or duties." The fact that DER's action was in the form of a letter being immaterial on the issue of appealability, *Department of Health v. Schum*, 21 Pa. Commonwealth Ct. 356, 346 A.2d 599 (1975); *Newport Homes, Inc. v. Kassab*, 17 Pa. Commonwealth Ct. 317, 332 A.2d 568 (1975); *Finkle v. State Real Estate Commission*, 17 Pa. Com-

monwealth Ct. 221, 331 A.2d 593 (1975); *Standard Lime & Refractories Co. v. Department of Environmental Resources,* 2 Pa. Commonwealth Ct. 434, 279 A.2d 383 (1971), we need only review the criteria of appealability set forth in *Man O'War Racing Association v. State Horse Racing Commission,* 433 Pa. 432, 250 A.2d 172 (1969).

First does the decision-making power and the manner in which it functions indicate judicial characteristics? We believe it does as DER is called upon in such instances to exercise its discretion by judging each such petition on its individual merits; clearly a judicial function.

Second, does public policy require that the decision in question be deemed appealable? Again, we conclude it does. The cost to industry of complying with environmental regulations is high and growing steadily and while industry is obligated to bear its share of the burden of cleaning and maintaining our environment, it should not be required to incur an expense not required by law which will ultimately be passed on to the consumer to the benefit of no one.

Finally, does the agency's action substantially affect property rights? Bethlehem estimates an installation cost of the required equipment of $360,000 and a yearly operating expense of $20,000. DER's argument that property rights are not affected because Bethlehem is required to do nothing it was not obligated to do before December 20, 1974, ignores the fact that when the technology available at the time of the original agency action is arguably advanced—here by the claim of Bethlehem that it can now measure such emissions—a continuation of the status quo may indeed substantially affect property rights.

All three criteria having been met, we conclude that DER's action of December 20, 1974, was a decision appealable to the EHB.

We turn then to the decisive issue in these proceedings; whether Bethlehem's petition of November 21, 1974, is barred by the res judicata effects of the September 24, 1973 variance order which Bethlehem never appealed.

Res judicata comes into play only upon the concurrence of four elements: (1) identity of the thing sued for; (2) identity of the cause of action; (3) identity of the persons or parties; and (4) identity in the quality of the parties for or against whom the claim is made. *Schubach v. Silver*, 461 Pa. 366, 336 A.2d 328 (1975); *Robachinski v. Workmen's Compensation Appeal Board*, 33 Pa. Commonwealth Ct. 89, 380 A.2d 952 (1977) (allocatur denied). If these four elements are present, matters which were or could and should have been litigated in a prior proceedings may not be relitigated or litigated in a subsequent proceeding. *McCarthy v. Township of McCandless*, 7 Pa. Commonwealth Ct. 611, 300 A.2d 815 (1973) (allocatur denied).

As we are of the view that the first element is absent, we must remand these proceedings to the EHB for a determination on the merits of Bethlehem's appeal.

The "identity of the thing sued for" in the instant proceeding is an exemption pursuant to Section 123.1 (a)(9), based upon data not previously available, while in the original variance procedure, on information then available to it, Bethlehem conceded its obligation to abide by said regulations and sought merely a grace period for compliance. This distinction renders inoperative res judicata.

We would note in closing that where the conduct involved is subject to continuing regulation and flexibility is desired, as it should be in this field of developing technology, 25 Pa. Code §141.3(3); *Department of Environmental Resources v. Pennsylvania*

*Power Co.*, 34 Pa. Commonwealth Ct. 546, 384 A.2d 273 (1978), res judicata should be applied sparingly. *Schubach v. Silver, supra.* If Bethlehem can prove through the use of new technology that certain emissions are insignificant and harmless to society, nothing would be gained by compelling Bethlehem to obey a so-called final order and comply with what may be obsolete regulations.[7]

## No. 773 C.D. 1977

This appeal is from DER's refusal to renew or extend the September 24, 1973 variance and EHB's denial of Bethlehem's appeal on the ground that Bethlehem failed to meet its burden of proof.[8]

Our scope of review of decisions of the EHB is limited to a determination of whether constitutional rights were violated, an error of law was committed and whether findings of fact are supported by substantial evidence. *Sharon Steel Corp. v. Department of Environmental Resources*, 28 Pa. Commonwealth Ct. 607, 369 A.2d 906 (1977).[9] Where, however, the

---

[7] This is not to say that the order is not final for certain purposes. For example, an action to enforce a variance order may proceed while an appeal such as this is pending, *Department of Environmental Resources v. Bethlehem Steel Corp.*, 469 Pa. 578, 367 A.2d 222 (1976), subject, of course, to the Court's power to grant a supersedeas.

[8] DER's power to grant a renewal and extension is found in 25 Pa. Code §141.4(a), which provides:

(a) Any temporary variance granted pursuant to this Chapter will be granted for a period of time not to exceed three years and may be renewed only once, such additional period of time not to exceed the period of time for which the variance was originally granted or two years, whichever is less.

[9] Section 44 of the AAL, 71 P.S. §1710.44, provides:
§1710.44 Disposition of appeal

The court to which the appeal is taken shall hear the appeal without a jury on the record certified by the agen-

record below is so inadequate as to make it impossible to effectively review the agency action, we must remand. *Wallingford-Swarthmore School District Tax Appeals,* 7 Pa. Commonwealth Ct. 60, 298 A.2d 278 (1972); *W. J. Dillner Transfer Co. v. Pennsylvania Public Utility Commission (No. 1),* 175 Pa. Superior Ct. 461, 107 A.2d 159 (1954).[10]

The extent of EHB's treatment of Bethlehem's application was to quote the provisions of 25 Pa. Code §141.11(b) relating to the contents of a petition for variance and state: "This information was not provided."

A review of the record reveals, however, that on March 21, 1975, Bethlehem submitted an application for renewal and extension of the September 24, 1973 variance and that said application, on its face, appears to provide the required information. There are no findings of fact in the adjudication as to the adequacy of this information and as the statement that said information was not provided is patently contrary to the record, we shall reverse and remand. *Begis v. Industrial Board of the Department of Labor and Industry,* 9 Pa. Commonwealth Ct. 558, 308 A.2d 643 (1973); *Gottshall v. Batt,* 71 Dauph. 383, 399 (1958). *See also Department of Environmental Re-*

cy. After hearing, the court shall affirm the adjudication unless it shall find that the same is in violation of the constitutional rights of the appellant, or is not in accordance with law, or that the provisions of sections thirty-one to thirty-five inclusive of this act have been violated in the proceeding before the agency, or that any finding of fact made by the agency and necessary to support its adjudication is not supported by substantial evidence. If the adjudication is not affirmed, the court may set aside or modify it, in whole, or in part, or may remand the proceeding to the agency for further disposition in accordance with the order of the court. (Footnote omitted.)

10 *Id.*

*sources v. Precision Tube Co.*, 24 Pa. Commonwealth Ct. 647, 358 A.2d 137 (1976) (allocatur denied).

ORDER

Now, September 6, 1978, the orders of the Environmental Hearing Board in the above appeals are hereby reversed and said cases are remanded to the Board for further proceedings not inconsistent with this opinion.