509 A.2d 1374

Re: Taking in Eminent Domain of Certain Parcels of Real Estate by the City of Easton, Pennsylvania, Constanza (Owner) 641, 643, 645 and 647 Walnut Street. City of Easton, Condemnor, Appellant.

Submitted on briefs November 15, 1985, to Judges DOYLE and PALLADINO, and Senior Judge KALISH, sitting as a panel of three.

*Herbert V. Giobbi, Ziev, Giobbi & McFadden,* for appellant.

*Richard J. Shiroff,* for appellee.

OPINION BY SENIOR JUDGE KALISH, May 28, 1986:

The City of Easton (Condemnor) appeals an order of the Court of Common Pleas of Northampton County which denied its post-trial motion requesting a new trial, and affirmed the court's earlier verdict awarding compensation to Salvatore Constanza (Condemnee) for the condemnation of his property. We vacate and remand.

In this non-jury eminent domain proceeding concerning Condemnee's property located at 641, 643, 645 and 647 Walnut Street, the trial court entered its verdict in favor of Condemnee, and awarded a total of $22,000 as just compensation. After fixing the amount of compensation, the trial court, in its verdict, added the following: "This sum is the amount of just compensation for the property disregarding the physical deterioration of the improvements because of the imminence of condemnation."

The Condemnor contends that the trial court erred in not allowing testimony regarding the imminence of condemnation and the demolition costs. Our scope of review, where there is an appeal from an order denying a new trial, is limited to a determination of whether the trial court was guilty of a manifest abuse of discretion or an error of law. *Borough of Tamaqua v. Knepper,* 54 Pa. Commonwealth Ct. 630, 422 A.2d 1199 (1980).

It is a fundamental principle of eminent domain law that fair market value for damages is determined as of the date of condemnation. *Frontage, Inc. v. Allegheny County,* 400 Pa. 249, 162 A.2d 1 (1960). Recognizing that the period of time between planning and actual condemnation, while not sufficient to establish a condemnation, may affect market value, the Eminent Domain Code provides for such a contingency:

> Any change in the fair market value prior to the date of condemnation which the condemnor or condemnee establishes was substantially due to the general knowledge of the imminence of condemnation, other than that due to physical deterioration of the property within the reasonable control of the condemnee, shall be disregarded in determining fair market value.

Section 604 of the Eminent Domain Code, Act of June 22, 1964, Special Sess., P.L. 84, *as amended,* 26 P.S. §1-604.

Thus, if there is a physical deterioration of the property within the reasonable control of the Condemnee, even though there is the imminence of condemnation, Section 604 does not change the prior law. The Condemnee must exercise his responsibility as an owner and keep his property in reasonable repair. If he does so, but nevertheless his property is vandalized or otherwise wrecked, he is entitled to compensation under Section 604. *Miller Appeal,* 55 Pa. Commonwealth Ct. 612, 423 A.2d 1354 (1980).

Unfortunately, the trial judge did not make findings of fact. However, in concluding that there was a physical deterioration, which the judge said he ignored in fixing damages, we can infer that the court found that the Condemnee fulfilled his responsibilities as a prudent owner, thus meeting his burden of showing the depressed value due to the imminence of condemnation.

Legal conclusions are always subject to appellate review. *Felmlee v. Lockett,* 466 Pa. 1, 351 A.2d 273 (1976). The court has a duty to decide whether the conclusion can be drawn from the testimony presented. *Taylor v. Unemployment Compensation Board of Review,* 474 Pa. 351, 378 A.2d 829 (1977).

The record shows that in September, 1981, prior to the actual date of condemnation, but during its imminence, the Condemnee did not make repairs to the roof, downspout, sidewalks, walls, ceilings, bathroom, kitchen and doors because, "we were waiting to see what was going to happen as far as investing or spending any more money on the property." In March, 1982, the City deemed the property unfit for human habitation and from that time on the Condemnee made no repairs at all. It would have cost him at least $5,000 to bring the property up to code standards.

It is not in the public interest to encourage owners of property, which is scheduled to be acquired by eminent domain, to ignore applicable health and safety codes during that interim period. *Miller Appeal.*

Accordingly, we vacate the order of the trial court, and remand for a finding of fair market value as of the date of condemnation.

### ORDER

NOW, May 28, 1986, the order of the Court of Common Pleas of Northampton County, No. 1983-CM-6044, dated November 26, 1984, is vacated. The record

is remanded to the Court of Common Pleas of Northampton County for a finding of the fair market value as of the date of the condemnation.

Jurisdiction relinquished.

CONCURRING OPINION BY JUDGE DOYLE:

The subject property consists of four lots, on three of which houses were constructed and rented by the Condemnee. They were acquired in 1957 and the Condemnee's testimony established that sometime approximately in 1981, he stopped renting the properties and he also stopped making repairs. The properties deteriorated to the point where the Condemnor (City) in March of 1982 declared the houses unfit for human habitation. Condemnation did not occur actually until 1983 when in July the Condemnor passed an ordinance and in August a declaration of taking was filed.

The precise issue is to determine the impact of the public awareness of the condemnation as that would affect the subject property. A pertinent quote from the Joint State Government Commission's comment to Section 604 of the Eminent Domain Code[1] is instructive:

> In many cases, condemnees suffer an economic loss because of an announcement of the proposed condemnation by the condemnor prior to the actual condemnation. Where such announcement is made and publicized, which may be several years before the actual condemnation, the tenants of the condemnee move out or fail to renew their leases and new tenants cannot be obtained because of the proposed condemnation. Under these conditions, the property which is to be condemned is economically deteriorated

---

[1] Act of June 22, 1964, Special Sess., P.L. 84, *as amended,* 26 P.S. §1-604.

through no fault of the owner-condemnee, and as a consequence at the time of actual condemnation, the amount of damages may be affected to the detriment of the innocent condemnee because of lack of tenants or because the condemnee was forced to rent at lower rentals for short terms. This section permits the Condemnee to show these economic circumstances in order to prove what his damages actually are at the date of taking. . . .

Physical deterioration of the property which may occur because of the imminence of the condemnation is also to be disregarded in determining fair market value if the condemnee has acted reasonably in maintaining and protecting his property.

Unfortunately this determination was not made by the trial judge and we are therefore at a loss to adequately perform our appellate review. When a record on appeal is such that a reviewing court cannot determine what factors were considered by the lower court or whether the court abused its power or committed an error of law, the case must be remanded. *Wallingford-Swarthmore School District Tax Appeals,* 7 Pa. Commonwealth Ct. 60, 298 A.2d 278 (1972). The trial judge in his terse comment that he disregarded the physical deterioration of the improvements because of the imminence of condemnation, did not address, *inter alia,* the question of the effect of the lack of tenants, and this determination is critical. The question remains unanswered: were there no tenants because the housing was unfit for human habitation, caused by the lack of repair; or did the lack of repair result from being untenantable because of the imminence of the condemnation?

For these additional reasons I concur with the result reached by the majority.