632 A.2d 1097

ENVIRONMENTAL NEIGHBORS UNITED
FRONT, et al., Petitioners,

v.

PA. DEPARTMENT OF ENVIRONMENTAL RESOURCES
and Mill Service, Inc., Respondents.

CAERNARVON TOWNSHIP, East Earl Township
and Red Rose Alliance, Petitioners,

v.

DEPARTMENT OF ENVIRONMENTAL
RESOURCES, Respondent.

BOARD OF COMMISSIONERS OF
UNION COUNTY, Petitioner,

v.

DEPARTMENT OF ENVIRONMENTAL RESOURCES and
USPCI of Pennsylvania, Inc., Permittee, Respondents.

Commonwealth Court of Pennsylvania.

Argued May 10, 1993.

Decided Oct. 26, 1993.

Jonathan B. Robison for petitioners Environmental Neighbors United Front, et al.

Elizabeth A. Hambrick–Stowe for petitioners Caernarvon Tp., East Earl Tp. and Red Rose Alliance.

Gregory H. Knight for petitioners Board of Com'rs of Union County.

Martin Sokolow for respondent Pennsylvania Dept. of Environmental Resources.

R. Timothy Weston for respondent Mill Service Inc.

Raymond K. Denworth, Jr. for respondent/intervenor, Envirosafe Services of Pennsylvania, Inc.

Kenneth J. Warren for respondent USPCI of Pennsylvania, Inc.

Before PALLADINO and S. FRIEDMAN, JJ., and SILVESTRI, Senior Judge.

FRIEDMAN, Judge.

In these three cases, Environmental Neighbors United Front, Caernarvon Township, East Earl Township and Red Rose Alliance, and the Board of Commissioners of Union County (collectively, Appellants) appeal three separate Environmental Hearing Board (EHB) orders dismissing appeals from Department of Environmental Resources' (DER) letter determinations. Although not consolidated, these cases involve similar facts and the same legal issue and were argued seriatim. In each case, the EHB determined that it lacked jurisdiction because the challenged DER determinations are not appealable at this stage of the permit process. We affirm.

The three cases are: (1) *Environmental Neighbors United Front, Smith Township, Robinson Township and 22 West Progress Group, Inc. v. Department of Environmental Resources*, No. 2277 C.D. 1992, concerning Mill Service, Inc.'s application to build a hazardous waste facility to be known as "Bulger Land Fill No. 3" in Smith Township, Washington County; (2) *Caernarvon Township, East Earl Township and Red Rose Alliance v. Environmental Hearing Board*, No. 2631 C.D. 1992, concerning Envirosafe Services of Pennsylvania application for a hazardous waste facility in Caernarvon and East Earl Township; and (3) *Board of Commissioners of Union County v. Department of Environmental Resources and USPCI of Pennsylvania, Inc.*, No. 2696 C.D. 1992, concerning the USPCI of the Pennsylvania, Inc., application for a hazardous waste facility in Gregg Township, Union County.

These cases arise under the Hazardous Sites Cleanup Act, Act of October 18, 1988, P.L. 756, 35 P.S. §§ 6020.101–1305 (Act). In enacting this legislation, the legislature determined that improper disposal of hazardous substances poses "a real and substantial threat to the public health and welfare of the residents of this Commonwealth and to the natural resources upon which they rely"[1] and expressed its intent that DER "undertake such measures and steps as are necessary to expedite the siting, review, permitting and development of hazardous waste treatment and disposal facilities within this Commonwealth, in order to protect public health and safety, foster economic growth and protect the environment." Section 102 of the Act, 35 P.S. § 6020.102(11). Section 309 of the Act provides that the secretary of DER appoint a Hazardous Waste Facility Siting Team to review permit applications for commercial hazardous waste treatment or disposal facilities.

Pursuant to section 309, DER adopted regulations which establish criteria for review of facility siting in two phases.[2] Phase I criteria are exclusionary and *prohibit* locating hazardous waste treatment or disposal facilities in certain areas. The prohibitions are based on the proposed site's proximity to community water supply, flood hazards, wetlands, oil and gas, carbonate bedrock, national natural landmarks and historic places, dedicated land in public trust, agricultural areas, or watersheds of exceptional value. 25 Pa.Code § 269.21–269.29. Once the team has determined that location of a hazardous waste facility on the proposed site is not prohibited under the Phase I criteria, the team can consider the Phase II criteria which "identify further environmental, social and economic factors which may affect the suitability of a location for a proposed facility." 25 Pa.Code § 269.13. If risks are identified in the Phase II evaluation, DER may require measures to reduce or eliminate these risks or may deny the application altogether. 26 Pa.Code §§ 269.13, 269.41–269.50. Each of the cases before us involves an appeal of a siting team's determi-

1. Section 102(2) of the Act, 35 P.S. § 6020.102(2).

2. These regulations are presently found at 26 Pa.Code §§ 269.1 to 269.50.

nation that the proposed facility complies with the Phase I criteria.

In each of the three cases, DER issued a letter stating that DER had concluded its review of the proposed facility's compliance with the Phase I siting regulations and that the applicant could proceed to submit Part B of the permit application. Each letter stressed that the Phase I determination merely allowed the applicant "to move forward with the full application." The letters to Mill Service and to Envirosafe contained the further statement: "Until all approvals are obtained to operate a commercial hazardous waste treatment facility and landfill . . . no wastes can be placed in the proposed [landfill]." (Case No. 2277, R.R. at 121a; Case No. 2631, R.R. at 2a.) The preliminary nature of the Phase I determination was expressed even more strongly in DER's letter to USPCI which stated: "This approval only allows USPCI to move forward with the full application, and does not in any way permit the management, treatment or disposal of hazardous wastes at this site, nor does it imply that such permission will ultimately be granted." (Case No. 2696, Brief for Appellant, Appendix A1.) Thus in each case, DER's determination allowed the applicant to proceed with the next step in the permit process while stressing that the permit application was still under review.

DER's letter determinations were appealed to the EHB and, in each case, the EHB determined that because DER's letter was not a final appealable action, the EHB lacked jurisdiction over the matter. Appellants appeal.

The issue before us is the same in each appeal:[3] whether DER's determination that the permit application for the commercial hazardous waste treatment or disposal facility complied with the Phase I siting criteria and that the applicant could proceed to the next step of the permit application

---

[3]. On appeal from an EHB decision, our scope of review is limited to determining whether constitutional rights have been violated, an error of law committed or whether findings of fact are supported by substantial evidence. *Bethlehem Steel Corp. v. D.E.R.*, 37 Pa.Commonwealth Ct. 479, 390 A.2d 1383 (1978).

process [4] is appealable. We know of no previous decision on this issue.

Appellants argue that the EHB has jurisdiction to review the Phase I siting determination. We disagree. Section 309 of the Act, 35 P.S. §§ 6020.309, establishes a review process for permit applications and provides for approval or disapproval of a permit application by the DER secretary. A careful reading of the Act and of the implementing regulations shows that the DER secretary's decision to approve or disapprove the permit is the final step in the permitting process.

In the cases before us, DER reviewed the applications for the hazardous waste facilities in light of specific requirements and determined that the Phase I exclusionary criteria did not prohibit the proposed commercial hazardous waste treatment or disposal facility on the site. Thus, the DER determination merely moved the applicant to the next step in the process. It was not a final appealable order.[5]

Appellants argue that DER's determination on the Phase I criteria is appealable under *Man O'War Racing Association v. State Horse Racing Commission*, 433 Pa. 432, 250 A.2d 172 (1969) and its progeny. *Man O'War* is easily distinguished. In that case, the State Horse Racing Commission had granted licenses to conduct horse race meetings to only four of fifteen applicants. Although the legislation at issue made no provision for appeal from the racing commission's decisions, Man O'War Racing Association, an unsuccessful applicant, appealed. Unlike the situation here, in *Man O'War* the racing commission's decision was final and operated as a denial of the

---

4. As part of the next step, the applicant must submit information concerning facility design and operation and non-exclusionary (Phase II) siting criteria. (Case No. 2631, R.R. at 28a.)

5. In general, only a final order is appealable. Although the term "final order" is not defined in the Administrative Agency Law, 2 Pa.C.S. §§ 501–508, 701–704, it is generally understood to be an order which disposes of the entire case or, as a practical matter, puts a litigant "out of court" with respect to a claim. Darlington et al., 1 *Pennsylvania Appellate Practice* §§ 102:9 and 341:2 (1986). Thus, any determination which put the permit applicant or the objectors out of court would be appealable. For instance, a Phase I determination which operates as a denial of the permit would be appealable.

Man O'War Racing Association's application because all licenses authorized for that year had been granted. Here, the Phase I determination is but one step in a continuing multi-step process and the Act specifically provides for appeal from the Secretary's decision to approve or disapprove a permit. The *Man O'War* criteria for appealability are not applicable here.

The Appellants also argue that public policy favors review of the Phase I siting decision. They argue that because an erroneous Phase I determination has serious health, safety and public welfare implications for the citizens of Pennsylvania, review should occur at this stage to avoid continued expenditure of public and private resources that might ultimately prove unnecessary. Although we acknowledge the validity of this argument, public policy is also served by avoiding piecemeal appeals which often create unnecessary delay and legal costs. Additionally, allowing piecemeal appeals can create confusion as to when individual issues are appealable.

While we recognize the significant public policy concerns of the Appellants, we also recognize strong arguments for avoiding piecemeal review. Resolution of these competing public policy issues is best left to the legislature.

Because a siting team's determination on the Phase I exclusionary siting criteria is not a final action, it is not appealable. The Act specifically provides for review of the decision on the permit application *following approval or disapproval of the application.* Section 309(e) of the Act, 35 P.S. § 6020.309(e). Therefore, Appellants may challenge a siting team's determination whenever there is a final approval or denial of the permit application, but not before.

Accordingly, we affirm.

## ORDER

No. 2277 C.D. 1992.

AND NOW, this 26th day of October, 1993, the order of the Environmental Hearing Board, dated September 24, 1992, is affirmed.

No. 2631 C.D. 1992

AND NOW, this 26th day of October, 1993, the order of the Environmental Hearing Board, dated November 10, 1992, is affirmed.

## ORDER

No. 2696 C.D. 1992

AND NOW, this 26th day of October, 1993, the order of the Environmental Hearing Board, November 17, 1992, is affirmed.