In Re: Appeal of Johnstown Associates from the Final Assessment of the Board of Assessment Appeals of Cambria County, Pennsylvania. Johnstown Associates, Appellant.

Argued December 4, 1979, before Judges CRUM-LISH, JR., MENCER, ROGERS, DISALLE and MACPHAIL. President Judge BOWMAN and Judges WILKINSON, JR., BLATT and CRAIG, did not participate.

*Philip Baskin,* with him *Alan C. Jacobson,* of *Baskin & Sears,* for appellant.

*John W. Taylor,* for appellee.

OPINION BY JUDGE ROGERS, March 12, 1980:

Johnstown Associates has appealed from an order of the Court of Common Pleas of Cambria County dismissing its appeal from the assessment of its real estate for local tax purposes by the Cambria County Assessment Board. We affirm.

Johnstown owns a 2.5 acre parcel of land in City of Johnstown on which it constructed the Joseph Johns Towers, a ten story building containing 165 apartments. The building was constructed by Johnstown under the Department of Housing and Urban Development's (HUD) Section 236 program[1] for the creation of housing for low and middle income families. HUD subsidizes 6% of the 7% interest payable on the property's $2,823,600 mortgage. Rents for the apartments are fixed by HUD at below the rental market for comparable non-subsidized units. Johnstown cannot retain any increased rentals and cannot sell the property for 16-1/2 years.

The assessment at issue is for the year 1977. The Board, using the capitalization of income method, determined the fair market value of the property to be $1,807,910. In the assessment records this figure is broken down into land and building components with market values of $551,453 and $1,256,457, respectively. The Board used the predetermined ratio of assessment to market value established for Cambria County of 35% to arrive at an assessment of $632,770. All of the 1977 figures were not materially different from those of prior years, going back to 1974. Johnstown appealed the assessment.

The relevant statute is The Fourth to Eighth Class County Assessment Law (the Act), Act of May 21, 1943, P.L. 571, *as amended,* 72 P.S. §5453.101 et seq. The Court of Common Pleas of Allegheny County heard Johnstown's appeal *de novo* as Section 704 of the Act, 72 P.S. §5453.704 requires. The county produced its chief assessor who identified the assessment records of Johnstown's property which were offered and admitted into evidence. The chief as-

---

[1] 12 U.S.C. §1715z-1.

sessor then testified that the market value of Johnstown's property for assessment purposes, $1,807,910, was arrived at by capitalizing the net income of the project, $161,127, at the rate of 8.84%. The 8.84% rate was the total of 4.44% for taxes, 2.5% for depreciation, .9% for mortgage interest and 1% for equity investment. The division of the net income of $161,127 by the 8.84% capitalization figure produces the figure $1,823,000. This last was adjusted downward to the amount of $1,807,910, the actual value used as the base for assessment.

Johnstown's evidence of value consisted of the testimony of an appraiser who thought the market value of the property for assessment purposes should have been arrived at by the following calculations: From information compiled by the Institute of Real Estate Management, a private real estate research enterprise, it is learned with respect to apartment projects located in Region III consisting of Pennsylvania, Maryland, the District of Columbia, West Virginia and Virginia, that on the average the percentage of local taxes to gross income is 10.3%, and that the same percentage of local taxes to gross income for apartment projects nationwide is 12%. Johnstown's appraiser then says that the average of these two figures, 11.15%, should be multiplied by $331,723, the gross income of Johnstown's facility, producing $36,-987 as the amount of local taxes Johnstown should be required to pay if it is to be treated in this respect uniformly with apartment projects in Region III and nationwide. To produce the amount of $36,987 in local taxes on Johnstown's property at prevailing local tax rates, Johnstown continues, its assessment must be $306,075. Applying Cambria County's predetermined 35% ratio of assessment to actual value to an assessment of $306,075 produces $874,500 as market value.

In a nutshell, Johnstown says that the actual value of its apartment project should be found to be the amount which will produce an assessment which in turn will result in taxes in an amount which bears the same proportion to its gross income as the local taxes of apartment projects throughout the country bear to their gross incomes. Johnstown's proposal is just the reverse of the manner in which under Pennsylvania law assessments for local tax purposes are required to be made. Section 602(a) of the Act, 72 P.S. §5453.602 imposes on the chief assessor the duty "to assess, rate and value all subjects and objects of location taxation . . . according to the actual value thereof." By actual value, the statute means market value, further defined as the price which a purchaser, willing but not obliged to buy would pay an owner willing but not obliged to sell. *Buhl Foundation v. Board of Property Assessment,* 407 Pa. 567, 180 A.2d 900 (1969). The sound supposition of the statute and the cases is that if each taxpayer's local taxes are based on a common level of assessment—that is, the same ratio of assessment to market value—each will pay his pro rata share of the burden of local government. *Deitch Co. v. Board of Property Assessment,* 417 Pa. 213, 209 A.2d 397 (1965). An acceptable method of ascertaining market value of a rental property is by the capitalization of net income, the method used by the chief assessor in this case. *Wynne, Inc. Tax Assessment Case,* 434 Pa. 59, 253 A.2d 632 (1969). This method recognizes the certain fact that willing, but not obliged, buyers and sellers of rental properties look to net income in deciding what they will pay for the properties in which they deal. Johnstown's proposal starts, not with an assessment based on market value determined by capitalizing net income, but with the proportion of local taxes to gross income of apartment projects nationwide and proceeds from

these elements, having no bearing on market value, to determine the assessment of its property. The proposal is not only without warrant in Pennsylvania law, it would, because it is unrelated to market value, produce lack of uniformity between apartment projects and other kinds of real estate.

A further error in Johnstown's proposal is its assumption that uniformity requires that the local taxes on its apartment project must be in the same proportion to its gross income as the average proportion of such taxes to gross income of apartment projects throughout the nation. We are here concerned with local taxes—the taxes imposed by Cambria County and by the school districts and municipalities located within the county boundaries, each of which is a taxing district. Although local taxes are levied in mills per dollar of the assessments of properties made by the county assessor, the millages and therefore the proportion of the amount of taxes to any other element, including gross income of rental properties, will differ among the districts according to the districts' needs for revenue. So long as local taxes are imposed uniformly within each taxing district—that is, uniform rates applied to uniform assessments—the constitutional requirement is met. Hence, the proportion of local taxes to gross income of apartment projects in Region III or nationwide constituted no standard of uniformity requiring Johnstown's property to be assessed at a figure which would provide the same proportion of taxes to gross income for its property. In short, the amount of local taxes are no indication of market value, standing alone or as a proportion of gross income.

Johnstown's theory seems to be based on the further assumption that apartment projects generally, and federally funded apartment projects particularly, constitute classes of real estate which must be valued

and assessed differently from other classes of real estate. The law is otherwise: real estate *is* the class and all real estate must be assessed uniformly based upon actual values. *Madway v. Board for the Assessment and Revision of Taxes,* 427 Pa. 138, 233 A.2d 273 (1967). It is true that want of uniformity of assessment may be demonstrated by showing that the taxpayer's property has been assigned a higher market value than other similar properties in the taxing district, *Calcagni v. Board of Assessment Appeals,* 38 Pa. Commonwealth Ct. 525, 394 A.2d 663 (1978); or by proving that a ratio of assessment to market value different from that commonly used in the district has been applied to the complaining taxpayer's property. *Deitch Co. v. Board of Assessment Appeals, supra.* No such showing was attempted to be made by Johnstown in this case. There is simply no authority for its assumption that uniformity requires that either apartment projects or low income apartment projects as a class must be assessed differently from other properties, that is, otherwise than by ascertaining their actual value. Moreover, to the extent that Johnstown's rentals may have been less than those of commercial apartment projects, that fact received consideration in the use by the county assessor of the capitalization of net income method of determining market value.

Johnstown presents several other questions which we find also to be without merit and which we will dispose of briefly. It says that the county assessment record should not have been considered by the court as establishing the prima facie validity of the assessment because the values of land and buildings are there shown separately. This, it says, shows that the total assessment was arrived at by making separate valuations of the land and buildings and recording their sum as the assessment. Johnstown has over-

looked Section 603(e) of the Act, 72 P.S. §5453.603(e), governing the form of the assessment roll, which requires the Board to show on the assessment roll separate values for land and improvements. In addition, the county's chief assessor testified as to how the market value of Johnstown's property was arrived at—by the proper means of capitalizing net income.

Johnstown also attacks the qualifications of the county assessor. No objection to the assessor's testimony was made on the basis of his lack of qualifications at the time of the hearing. His testimony was that he capitalized net income to arrive at the actual value of Johnstown's project. Surely a county chief assessor, even one not as well qualified as the Cambria County chief assessor appears to have been, is competent to explain how he arrived at his determination of market value.

Johnstown finally complains that Judge Abood's opinion for the court below demonstrated that he improperly considered the amount of the mortgage on Johnstown's property and the tax shelter aspects of the project. Judge Abood did mention in passing the size of the mortgage and the tax benefits of the venture to Johnstown's investors. At the center of his opinion, however, is the recognition that, as he expressed it, "the law requires . . . the establishment of fair market value for assessment purposes." Judge Abood clearly delineated the positions of the parties and properly decided the merits of the case in the county's favor.

Order affirmed.

## Order

And Now, this 12th day of March, 1980, the order of the Court of Common Pleas of Cambria County made May 29, 1979 is affirmed.

64

President Judge BOWMAN did not participate in the decision in this case.

Judge DISALLE did not participate in the decision in this case.