**In Re: Appeals from Tax Assessments Imposed Against Various Properties Situate in Pocono Mountain Lake Estates, Lehman Twp., Pocono Mountain Woodland Lakes, Dingman Twp. Tink-Wig Mountain Lake Forrest, Lackawaxen Twp., Pike County, Pa.**

*John T. Stieh,* for appellants.
*John F. Finan,* for the Board of Assessment.

THOMSON, *P. J.,* December 23, 1982 — Appellants in this action are petitioning to set aside as-

sessments of their real property made by the Assessors of Pike County, Pa. Appellants' property was reassessed in 1980 as part of a county wide reassessment. The segment of the reassessment in question deals with development land. The Board of Assessment determined that the base year for the assessment for Pike County was 1973. Appellants have raised two separate issues in their petition.

### I. Whether The 1973 Market Values Of The Subject Properties Were Determined Correctly By The Assessors Of Pike County?

Appellants argued that the assessors' methods in determining the market value of their properties was faulty under the Fourth to Eighth Class County Assessment Law, the Act of May 21, 1943, P.L. 571, Art. I., §101; 72 P.S. §5453 101 et. seq. Appellants specifically refer to 72 P.S. §5453 602(a) which states:

It shall be the duty of the Chief Assessor to assess, rate and value all subjects and objects of local taxation, whether for county, township, town, school (except in cities), county institution district, poor or borough according to the actual value thereof, and in the case of subjects and objects of local taxation other than real property at such rate and prices for which the same would separately bona fide sell. . . . In any property arriving at such value, the price at which any property may actually have been sold shall be considered, but shall not be controlling. Instead, such selling price estimated or actual shall be subject to revision by increase or decrease to accomplish equalization with other similar property within the county. . . .

Appellants complain that the Pike County Assessors used only sales from developers and subdivid-

ers as comparable sales for determining their valuations. The argument is that this is not a valid method for determining appellants' land valuation because their land was purchased through separate and distinct individuals and not from developers.

Appellants have submitted an affidavit from an expert on valuation. It is her opinion that it is improper to solely use developer sales for purposes of determining fair market value based on comparable sales. The expert feels that the developer sales will naturally run higher to cover the expenditures incurred by the developers in their sales campaigns. The expert adds that high pressure sales techniques also drove the sale price up.

The county takes the position that for the land in question, developer sales are comparable sales. The Director of Assessment's affidavit sets forth that he used sales of comparable properties in each of the developments to determine valuations. The county agrees that this is a fair and reasonable method for determining valuation.

We hold that the assessors' methods for determining the 1973 market value for the land in question is permissible. It is the duty of the assessor under §602 (a) to attempt to determine the "actual value" of the assessed property. The term "actual value" has been held to refer to market value. U.S. Steel Corp. v. Board of Assessment and Revision of Taxes of Bucks County, 422 Pa. 463, 223 A.2d 92 (1966). This has been further defined as price which a purchaser willing but not obliged to buy would pay an owner willing but not obliged to sell. In Re Johnstown Associates, 50 Pa. Commw. 56, 412 A.2d 198 (1980).

Appellants argue that the sales techniques of the developers somehow remove some of the free will of the buyers and thus raise the sales price. We hold,

however, that these developer sales are comparable and not anything approximating a forced or judicial sale. All of the comparisons made by the assessors were between lots of similar size and location. The mere fact that the sales were conducted in a different manner is not sufficient reason to hold that assessments did not determine the "actual value" of the appellants property. It is the intent of the law to achieve uniformity of assessments throughout each county of the fourth to eighth class based on actual value of the properties assessed. Evert v. Elk Co. Board of Assessment, 37 D. & C. 2d 1 (1965). We feel that the assessors actions here have complied with that intent. To inject the numerous and subtle factors in determining valuation that the appellants request could only lead to a precedent approach that would be in derogation of the act's intent.

II. Whether The Board of Assessment And Revision Of Taxes Properly Failed To Consider The Decline In Values Of The Subject Properties Based On The Economy Of The County.

Appellants' expert on valuation states in her affidavit that there has been a general decline in the values of property in Pike County since 1973. Appellants argue that the Board should have taken this into consideration. This argument is based on 72 P.S. §5453.602(a) which states:

The board *may* change the assessed valuation on real property when (i) a parcel of the land is divided and conveyed away in smaller parcels, or (ii) *when the economy of the county or any portion thereof has depreciated or appreciated to such extent that real estates values generally in that area are affected,* and (iii) when improvements are made to real property or existing improvements and removed

from real property or are destroyed. (Emphasis supplied.)

Appellants seem to argue that this statute mandates a change in the assessed valuation every time real estate values in a particular area are generally affected. We hold, however that this statute imposes no such duty on the board. While many of the other sections of this act impose a mandatory duty on the board or the chief assessor by the word "shall" (I.E. §§545-3. 201, 5453.302, 5453.401 and 5453.601), §§5453.601), §§5453.602(a) gives discretion to the board in making its decision in changing the assessed valuation. We see no evidence of such a drastic economic decline that warrants overturning the board's decision.

## ORDER

And now, this December 23, 1982, appellant's petition to set aside assessments of certain real property is hereby denied.