## Pennsylvania's Northern Lights Shoppers City, Inc. Appeal.

Argued May 26, 1965. Before BELL, C. J., MUSMANNO, JONES, COHEN, EAGEN, O'BRIEN and ROBERTS, JJ.

*Eugene A. Caputo,* for appellant.

*Oran W. Panner,* for appellee.

OPINION BY MR. CHIEF JUSTICE BELL, September 29, 1965:

Pennsylvania's Northern Lights Shoppers City, Inc.* was the owner of approximately 50 acres of land on which was erected a regional shopping center consisting of 70 commercial stores, located in three building units. Northern's property is situate in the Borough of Economy, Beaver County, and is the only shopping center in that County.

The Board of Assessment and Revision of Taxes of Beaver County** fixed the market value of Northern's property for 1961 at $4,667,980 and the assessed value at 30 percent of market value or $1,400,394. On appeal by Northern, the lower Court, in an exhaustive Opinion, fixed the actual fair market value of Northern's property at $3,976,654, and the assessed value for tax purposes at $1,192,996. From the final Order which dismissed exceptions filed by both Northern and the Board, the Board took this appeal.

The assessment fixed by the Board for the year 1961 represents a 40% increase over the tax assessment of the property which was fixed by the Court for the years 1959 and 1960. Between 1959 and 1961 no other buildings were erected, nor were any improvements made on Northern's property. Moreover, since the 1959 assessment, a valuable tract of Northern's property was sold by it and (of course) there were two years of further depreciation in the existing buildings.

Northern produced three expert witnesses. One testified that the market value of the property was $3,360,000, another $3,365,460, and Northern's third witness $3,525,216.

The Board, in order to overcome this testimony and support its assessment, produced three expert wit-

---

* Hereinafter referred to as Northern.
** Hereinafter referred to as the Board.

nesses. One witness testified that the market value of the property was $4,667,980, another $4,800,000, and the Board's third witness, $4,965,000. The lower Court, as above noted, fixed the market value of the property at $3,976,654.

All of the six experts, whether testifying for the Board or for Northern, agreed that the capitalization of net income is, overall, the most scientific and the most accurate method for finding the actual (fair) market value of a purely commercial property, such as *a shopping center*.

The witnesses for Northern based their opinion as to the actual (fair market) value in 1961 principally on the capitalization of net income. Two real estate experts who testified in rebuttal on behalf of the Board used two methods in fixing the market value of Northern's property: (1) Reproduction cost less depreciation; and (2) a capitalization calculation which combines (a) capitalizing the land, and (b) the reproduction cost, less depreciation for the value of the improvements and buildings.

The Board's principal contention is that reproduction cost less depreciation may be used in conjunction with the capitalization of net income in determining the actual (fair market) value for tax assessment purposes. While many factors may be considered in determining actual or fair market value, the lower Court properly rejected the testimony of the Board's expert witnesses on the ground that reproduction cost less depreciation may not be used as a factor in determining the market value of property: *Buhl Foundation v. Bd. of Prop. Assess.*, 407 Pa. 567, 180 A. 2d 900; *Traylor v. Allentown*, 378 Pa. 489, 106 A. 2d 577; *North Park Village, Inc. v. Bd. of Prop. Assess.*, 408 Pa. 433, 184 A. 2d 253.

In *Park Drive Manor Tax Assessment Case*, 380 Pa. 134, 136, 110 A. 2d 392, 394, the Court said: "In

determining market value many factors may be relevant, *including capitalized rental income*,[*] comparable sales, location of the property and condition of the buildings: [citing cases] But all the elements considered must be directed to determining the value of the property in the market, a determination which is not controlled by any single factor and which is ultimately made on the basis of competent testimony as to what the property is worth in the market at a fair sale."

In *Buhl Foundation v. Bd. of Prop. Assess.*, 407 Pa., supra, this Court aptly stated (pages 570, 570-571): "The landowner called as its witness the chief building appraiser of the Board of Property Assessment of Allegheny County, the individual who made the assessment for the board. He testified that he considered several factors in arriving at his conclusion as to the value of the buildings involved, but an analysis of his testimony makes it clear that the major and basic factor used was *depreciated reproduction costs. This was error.*

. . .

". . . reproduction cost has no probative value for any purpose in fixing the fair market value of improved real estate for tax purposes: Metropolitan Edison Co.'s Appeal, 307 Pa. 401, 161 A. 303 (1932). Accord, McSorley v. Avalon Boro. School Dist., 291 Pa. 252, 139 Atl. 848 (1927); Algon Realty Co. Tax Assessment Appeal, supra.

"Since an improper factor was . . . used in computing the assessment, . . . the finding of value [based thereon] . . . cannot stand."

The Board further contends that the trial Judge committed prejudicial error when he allowed the introduction into evidence of the record of the 1959 as-

---

[*] Italics throughout, ours.

sessment of this property. This contention is devoid of merit for two reasons: (1) Although this evidence was objected to at trial, its admissibility was never thereafter raised by exceptions or argument in the lower Court; and (2) the lower Court, in its Opinion, clearly and correctly stated that the prior assessment was not res adjudicata, but was a factor which might be considered.

The Board also contends that testimony relating to the *market value* of a shopping center beyond the territorial limits of Beaver County is inadmissible to determine the actual (or fair) market value of a shopping center within the County. The lower Court admitted this evidence, with doubt and reservation, and did not mention it in its exhaustive Opinion. The mere fact that a property is located across the County line would not of itself make the evidence inadmissible if it were admissible notwithstanding its location.

Order affirmed.