Wynne, Inc. Tax Assessment Case.

Argued January 23, 1969. Before BELL, C. J., JONES, COHEN, EAGEN, O'BRIEN, ROBERTS and POMEROY, JJ.

*Morris Gerber,* with him *Cassin W. Craig, David M. Jordan, Harry Norman Ball,* and *Wisler, Pearlstine, Talone & Gerber,* for appellant.

*John E. Forsythe,* Township Solicitor, with him *Herbert Bass, Roger B. Reynolds, Anthony J. Giangiulio,* and *MacCoy, Evans & Lewis,* for appellees.

OPINION BY MR. JUSTICE JONES, April 23, 1969:

This is an appeal from an order of the Court of Common Pleas of Montgomery County fixing the tax assessment of the Thomas Wynne Apartments in Lower Merion Township at $1,033,333.33 for the taxable years 1962 through 1966.

This tax assessment controversy arose when the taxpayer, Thomas Wynne, Inc. (appellant), appealed to the court the 1962 tax assessment of $1,144,000.00 placed by the Montgomery County Board for the Assessment and Revision of Taxes (Board) on its apartment building. By agreement of counsel, hearing on

this appeal was continued indefinitely while attempts were made to reach an amicable settlement. When all attempts at a settlement broke down in 1965, the taxing authorities* filed an answer to appellant's petition. The parties then stipulated that appellant would have the right to appeal the 1963 through 1966 assessments nunc pro tunc in addition to the appeal from the 1962 assessment. After hearings, the court below fixed the new assessment at $1,033,333.33 for each of the five years in dispute.

Appellant's first assignment of error is the alleged refusal of the court below to consider the tax assessment on the apartment building for the years 1959 through 1961, during which time the building was assessed at $902,900.00. Appellant argues that the court was bound to consider prior assessments in reviewing the current assessments because of our decision in *Pennsylvania's Northern Lights Shoppers City, Inc. Appeal*, 419 Pa. 31, 213 A. 2d 268 (1965). The court did admit the prior assessment into evidence, and the record indicates that the court did consider the prior assessment but discounted the impact of the assessment because it did not reflect the true market value of the apartment building.

In opposing the admission of the prior assessment into evidence, counsel for the taxing authorities explained that the previous assessment was the result of a compromise between the parties. It appears that the Board had incorrectly notified appellant that its building had been re-assessed at $902,900.00. Although the taxing authorities felt they were not bound by this mistake since the correct amount of the assessment had been noted on the tax rolls, nevertheless they

---

* Appellees in this case—hereinafter referred to as the taxing authorities—include Lower Merion Township, Lower Merion School District and Montgomery County.

decided that they should not take advantage of a taxpayer by reason of a legal technicality and agreed to accept the lower assessed value. The court below, being of the opinion that this compromise settlement did not reflect the true market value of the apartment building, concluded the prior assessment was of such a nature that it had little probative value in reviewing the validity of the current assessment. Under the circumstances, the court below did not commit reversible error in finding that the prior assessment had little, if any, probative value. In *Northern Lights*, we did not hold, expressly or impliedly, that a trial court was bound or concluded by prior assessments. In the case at bar, the trial court did consider the prior assessment and rejected it because it found that it did not reflect the true market value; *Northern Lights* does not require a trial court to do otherwise.

Appellant's second contention involves a stipulation between the parties to the effect that, during the period in question, the Board assessed for tax purposes all property in the township at the ratio of one third of its market value. Seven months after the final hearing, appellant petitioned the court to schedule another hearing to receive evidence showing that the Board did, in fact, apply nonuniform ratios to various properties. The court denied this petition and appellant assigns such denial as reversible error. Appellant alleges that it was induced to enter into the stipulation by reason of misrepresentation by the Board's attorney; appellant does not, however, indicate *how* it was misled. Furthermore, appellant has cited no examples of the application by the Board of nonuniform assessment ratios and, moreover, it was appellant who first introduced the stipulation. After some five years of negotiation and litigation, appellant seeks to prolong further this litigation by seeking a hearing on a

matter which it substantiates with only the barest of allegations. On the state of this record, we find no error in the denial by the court below of the petition for further hearing.

Appellant's final and principal contention attacks the method by which the court below arrived at its evaluation of the market value of the property. Both parties agree that the proper standard and criterion of evaluation of property for tax assessment purposes is the market value of the property and that one of the most accurate methods in arriving at true market value is the capitalization of net income. Two experts utilizing this approach testified for appellant and one expert testified for the taxing authorities. In addition, the court appointed an independent accountant to compile the relevant financial data from appellant's books for four of the five years in question.

John P. Merriam, appellant's president, calculated appellant's *gross* income by taking 100% of the rental value and then subtracting therefrom 5% for vacancy allowance and 4% for replacement reserve; from the resulting figure, he then subtracted the operating expenses, determined by the accountant, to arrive at *net* income. He then capitalized the *net* income figure at a rate of 9.67% to arrive at a market value of $2,260-000.00 in 1962 which declined to $1,860,000.00 in 1965. Appellant's second expert, Joseph Widing, agreed, in large measure, with Mr. Merriam's computations but capitalized the net income at a rate of 8½% for the years 1962 through 1964 and at 9% for 1965.

The taxing authorities' expert, Bernard C. Meltzer, disagreed with appellant's experts in several major areas. First, he urged that the value of the apartment building should not be measured on a year-to-year basis since the gross income varied less than 2% during the five years in question; therefore, he averaged

the *gross* income for the five-year period and arrived at a single figure. Second, he did not deduct any vacancy allowance since the *gross* income for each year reflected any vacancies. Third, he did not deduct a replacement allowance because these costs were already computed in the operating expenses. Fourth, he disallowed as operating expenses sums spent on parties for the Academy of Fine Arts and a 5% managerial fee paid to Mr. Merriam in addition to 6% already allotted for the manager and his staff. After averaging the *gross* income and operating expenses, he capitalized the net income at an 8% rate to arrive at a market value of $3,100,000.00 for each of the five years. He justified this rather low capitalization rate on the ground that an investment in an established and successful apartment building in Lower Merion Township was a very secure and stable investment.

Appellant's challenges to the result reached by the court below focus on factual determinations made by the court en route to reaching a market value of $3,-100,000.00.

Our scope of review of factual questions in tax assessment cases is very limited. In *Park Drive Manor, Inc. Tax Assessment Case*, 380 Pa. 134, 110 A. 2d 392 (1955), we outlined our scope of review: "The court of common pleas is the fact finding body in a tax assessment appeal. The principle is clear that the findings of the court of common pleas have great force and will not be set aside by this Court unless clear error is made to appear: [citing authorities]. Nor will the appellate Court disturb the findings and substitute its judgment for that of the court of common pleas, because it is clear that market value is a factual question to be determined by the trial court on the basis of expert testimony." (380 Pa. at 136, 137) Bearing in mind this limited and narrow scope of re-

view, we turn to appellant's contentions. First, appellant claims that a capitalization rate of 8% is too low, appellant's experts having set the capitalization rate at between 8½% and 9.67%. Appellant overlooks the fact, however, that an investment in an established apartment building in Lower Merion Township is extremely secure. Mr. Meltzer testified that there have been no sales of apartment buildings in Lower Merion in the past five years, that the demand for apartments is greater than the supply and that there has been no sustained vacancy problem in the Thomas Wynne Apartments during the five years in question. Under these circumstances, it is beyond our judicial competency to find that 8% is an inadequate capitalization rate.

Second, appellant contends that a prudent buyer would take into consideration an allowance for depreciation, vacancy and replacement. The court below held that, since the value of land was appreciating at such a rapid rate in Lower Merion Township, there was no need to allow for depreciation in determining the market value of this apartment building and, furthermore, depreciation is primarily a tax factor which does not *always* enter into the calculation of market value. As to the vacancy and replacement allowances, the court held that it was error to allow for such allowances since the actual figures were available for the years in question. Moreover, the number of vacancies never approached the 5% allowed by appellant's experts and the replacement costs were already included in the operating expenses. We cannot find that the trial judge committed error in arriving at these determinations.

Third, appellant questions whether the court could properly average out operating expenses over the five years when the figures prepared by the court-appointed

accountant indicated that expenses actually increased by almost 20% over the four-year span covered by his study. Mr. Meltzer testified that the increase was attributed to capital expenses incurred to make the apartment building more competitive during a temporary period of high turnover; furthermore, these expenses should have been trended over several years instead of being taken in the year in which they were actually incurred. Again, we find no reversible error in the court's acceptance of this analysis.

The ultimate question in any tax assessment case is the market value of the subject property. Capitalization of net income is just one method of determining market value. Mr. Meltzer employed two other methods to confirm the figure he reached using the capitalization of net income approach. He testified that both the gross income multiplier and market comparable approaches gave results in the neighborhood of the $3,100,000.00 figure reached by the capitalization of net income method. This additional testimony serves to corroborate the market value determined by the court below.

We find no error on this record which would justify a reversal of the action of the court below.

Order affirmed.

———

DISSENTING OPINION BY MR. JUSTICE COHEN:

The majority and the lower court rely upon the capitalization of net income as the sole factor in computing the market value. While I would agree that capitalization of net income is one of the factors to be considered by the Court, I would not hold that it can be the sole factor for the determination of market value. The complexities of determining net income as evidenced by the variables set forth in the majority opinion, and the difficulty of capitalization after net

income is determined, substantiate my opinion. Net income is so inexorably dependent on the ability of management that it alone is not a reliable guide to market value. I would remand this case to the lower court for the determination of fair market value by resorting to additional available proofs.

.I dissent.

Mr. Chief Justice BELL joins in this dissent.