431 A.2d 932

**In re Appeal of JOHNSTOWN ASSOCIATES from the Final Assessment of the Board of Assessment Appeals of Cambria County, Pennsylvania.**

**Appeal of JOHNSTOWN ASSOCIATES.**

Supreme Court of Pennsylvania.

Submitted March 3, 1981.

Decided July 2, 1981.

434

Philip Baskin, Alan C. Jacobson, Baskin & Sears, James J. Flaherty, Pittsburgh, for appellant.

John W. Taylor, Sol. for Cambria County, Ebensburg, for appellee.

Before O'BRIEN, C. J., and ROBERTS, NIX, LARSEN, FLAHERTY, KAUFFMAN and WILKINSON, JJ.

## OPINION OF THE COURT

FLAHERTY, Justice.

This is an appeal from an Order of the Commonwealth Court[1] which affirmed an Order of the Court of Common Pleas of Cambria County dismissing the appeal of Johnstown Associates from a 1977 real estate tax assessment of the Cambria County Board of Assessment Appeals.

In 1973, the appellant, Johnstown Associates (hereinafter taxpayer), constructed a 165 unit low-income apartment building in the City of Johnstown. The project was subsidized through the Department of Housing and Urban Development (HUD), under a Section 236 program (12 U.S.C. § 1715z–1), to the extent of all but one percent of the interest payable on the property's mortgage. Rents for the apartments are fixed by HUD below rents prevailing for comparable non-subsidized units. Rental profit increases, if any, cannot be retained by the taxpayer; nor can the property be sold during the 16½ year period following construction. The building in question is the only federally-subsidized housing project in Cambria County.

 The Board of Assessment determined the fair market value of taxpayer's property to be $1,807,910, and, pursuant to its normal practice of assessing all property at 35% of market value, assessed the property at $632,770. Entered

---

1. *Appeal of Johnstown Associates*, 50 Pa.Cmwlth. 56, 412 A.2d 198 (1980).

into evidence in the Court of Common Pleas was an assessment record which appeared to list the $1,807,910 figure as the sum of land value plus building replacement cost less depreciation. Replacement cost less depreciation cannot be used as a factor in computing the market value of a building for tax purposes. *Appeal of Pennsylvania Northern Lights Shoppers City*, 419 Pa. 31, 213 A.2d 268 (1965). However, Cambria County's chief assessor testified that the appraisal was in fact based on the capitalization of income approach to value.[2] The property's net income of $161,127 was capitalized by the assessor at a rate of 8.84%, which consisted of 4.4% for taxes, 2.5% for depreciation, .9% for interest, and 1% for equity investment. By this method, a value of $1,823,000 was indicated; thus, the capitalization method of appraisal yielded a value that *exceeded*, by $15,090, the fair market value listed on the assessment record. The Court of Common Pleas affirmed the assessment, thereby adopting the lower initial valuation of $1,807,910.

The taxpayer claims that the effect of the assessment is to require that too high a proportion of the property's gross income, i. e., 24.9%, be applied to the payment of real estate taxes. In support of this position, evidence was introduced indicating that the combined national and regional average percentages of gross income allocated to real estate tax payments on *non-subsidized* apartment buildings is approximately 11%. In short, the taxpayer argues that a subsidized apartment project's value should be set at a level which will result in real estate taxes being owed which bear the same relation to gross income as the taxes on *non-subsidized* apartment buildings bear to their incomes, i. e., 11%. If the 11% ratio were to be applied in the foregoing manner to the property's gross income of $331,723, a market value of $874,500 would be indicated. Such an approach to value, however, has never been sanctioned in this Commonwealth.

2. The taxpayer contends that the assessor was not qualified to render expert opinion as to property value, beyond merely explaining the manner in which the assessment was derived. However, no objection was made to his testimony at trial; hence, the issue has been waived. *Jones v. Treegoob*, 433 Pa. 225, 249 A.2d 352 (1969).

██ The Pennsylvania Constitution, art. VIII, § 1, states that "all taxes shall be uniform on the same class of subjects ..." Indeed, this Court has held that the constitutional requirement of uniformity is satisfied so long as the taxing authority assesses all property at the same percentage of its actual value; by maintaining such a uniform ratio, each property will be held accountable for its pro rata share of the burden of local government. *Deitch Co. v. Board of Property Assessment*, 417 Pa. 213, 209 A.2d 397 (1965). The uniformity standard is not violated by allowing variations, between buildings, with respect to ratios of taxes to income.

Nor do we find convincing taxpayer's argument that rejection of the uniform ratio method of appraisal will result in a tax burden on private subsidized housing so ominous as to render impossible the continuation of such projects. Adoption of the method urged by the taxpayer would amount to a judicially-mandated project subsidy by local government, beyond that which legislative policy has established.

██ The taxpayer alleges that the Court of Common Pleas, by relying principally on the capitalization approach to value, failed to consider the full range of factors that must be taken into account in determining the actual market value of Section 236 property. With this contention, we agree. The concept of actual market value requires that reasonably applied vehicles be employed to arrive at the "price which a purchaser, willing but not obliged to buy, would pay an owner, willing but not obliged to sell, taking into consideration all uses to which the property is adapted and might in reason be applied." *Brooks Building Tax Assessment Case*, 391 Pa. 94, 97, 137 A.2d 273, 274 (1958). Many factors go into the determination of market value. *McKnight Shopping Center v. Board of Property Assessment Appeal and Review*, 417 Pa. 234, 209 A.2d 389 (1965). Capitalization of net income is just one of the traditional approaches to determining market value for an apartment building, and is quite appropriate under most circumstances. *Appeal of Thomas Wynne, Inc.*, 434 Pa. 59, 253 A.2d 632

(1969). In a tax assessment appeal, the factual findings of the Court of Common Pleas have much weight and will not be reversed on appeal unless clear error is present. *Appeal of Park Drive Manor Inc.*, 380 Pa. 134, 110 A.2d 392 (1955). However, the Court of Common Pleas expressly rejected the view that realistic consideration should be given, in the market value inquiry, to the effect of rent and sale restrictions affecting the taxpayer's property under terms of the Section 236 subsidy.

■ Regarding the relevant scope of the value inquiry, this Court has stated:

"The reasonably foreseeable prospects for the property during the subject [assessment period]—its probable return on capital, its probable use and occupancy, its probable lease and/or sale, etc.—form a legitimate area of inquiry. Whatever factors are based upon a reasonable probability existing at the time of the assessment, as opposed to pure speculation, are relevant to the question of value . . . While not controlling, they are not irrelevant. . ."

*McKnight Shopping Center*, 417 Pa. at 242–243, 209 A.2d at 393. By this standard, the certitudes of a property's not being presently saleable, and of its not having a potential for rental profit increases, both of which are factors unique to Section 236 property, are clearly matters relevant to the question of value and must *at least be considered.* See also *Flamingo Apartments, Inc. v. Board of Revision of Taxes,* 383 Pa. 223, 118 A.2d 197 (1955). These factors, however, were accorded no consideration by the lower court's exclusive reliance upon the traditional capitalization approach, or by the particular capitalization rate employed. We need not immediately address the question, however, of in what manner consideration of the Section 236 restrictions, and of the fact that they are of limited duration, will affect the estimate of present value.

■ Finally, the taxpayer claims that the Court of Common Pleas improperly considered the amount of the initial mortgage on the property, and the tax shelter aspects of the

venture, in calculating market value. The court's opinion did mention in passing that the amount of the initial mortgage was $2,823,600, but the initial debt did not, in any discernable fashion, enter into the court's value calculation. The extent to which the court regarded the income tax status of the taxpayer as relevant to the market value determination is not clear. Certainly, the tax status of the *particular* property owner is not a relevant inquiry under traditional circumstances; however, depreciation tax shelter benefits associated with investment property ownership inherently affect market value, and the court is not constrained to determine market value as though real property ownership lacked tax shelter features.

The Orders of the Courts below are vacated and the case is remanded to the Court of Common Pleas for further proceedings consistent with this opinion.

NIX, J., concurs in the result.

O'BRIEN, and ROBERTS, JJ., would dismiss the appeal as improvidently granted.