614 A.2d 342

**TIMBER TRAILS COMMUNITY ASSOCIATION and Lake Naomi Club**

v.

**COUNTY OF MONROE and Monroe County Board of Assessment Appeals (Two Cases).**

**LAKE NAOMI CLUB**

v.

**COUNTY OF MONROE and Monroe County Board of Assessment Appeals (Two Cases).**

**TIMBER TRAILS COMMUNITY ASSOCIATION**

v.

**COUNTY OF MONROE and Monroe County Board of Assessment Appeals (Two Cases).**

Appeal of COUNTY OF MONROE and Monroe County Board of Assessment Appeals.

Appeal of TIMBER TRAILS COMMUNITY ASSOCIATION and Lake Naomi Club, Appellants.

Commonwealth Court of Pennsylvania.

Reargued June 17, 1992.

Decided Aug. 12, 1992.

30

Mark S. Love, for appellants.

Thomas B. Kenworthy, for appellees.

Before CRAIG, President Judge, and DOYLE, McGINLEY, SMITH, PELLEGRINI, FRIEDMAN and KELLEY, JJ.

SMITH, Judge.

Before this Court are appeals filed by the County of Monroe and Monroe County Board of Assessment Appeals (Board), collectively Appellants, and cross-appeals filed by Timber Trails Community Association (Timber Trails) and Lake Naomi Club (Lake Naomi), collectively Owners, from the December 4, 1990 order of the Court of Common Pleas of Monroe County assessing various parcels of common areas owned by Timber Trails and Lake Naomi at a zero value for the 1989 and 1990 tax years and denying a request of Timber Trails and Lake Naomi for costs and reasonable attorney's fees.

■ The issues raised before this Court are whether the trial court had jurisdiction to hear appeals from the assessments of Timber Trails' two golf course parcels for the 1989 tax year when these properties were not listed in the notice of intention to appeal; whether the trial court properly determined the actual market value of the common areas to be zero; and whether the Owners are entitled to costs and reasonable attorney's fees.[1] These issues were disposed of by opinion and order filed on January 16, 1992 which was withdrawn after this Court granted the Owners' application for limited reargument as to the issue of the assessment of common areas.

Timber Trails and Lake Naomi own and manage the common areas of the Timber Trails and Lake Naomi Communities located in Tobyhanna and Coolbaugh Township, Monroe County. The common areas consist of various amenities and facilities such as swimming pools, tennis courts, lakes, golf courses, trails and maintenance facilities. On August 26, 1988, pursuant to The Fourth to Eighth Class County Assessment Law (Law), Act of May 21, 1943, P.L. 571, *as amended,* 72

---

1. This Court's scope of review in a tax assessment case is limited to a determination of whether the trial court committed an error of law or abused its discretion. *Appeal of Cornwall Manor of United Methodist Church,* 127 Pa.Commonwealth Ct. 156, 561 A.2d 73 (1989), *appeal denied,* 524 Pa. 632, 636, 574 A.2d 72, 75 (1990).

P.S. §§ 5453.101–5453.706, Pocono Pines Corporation[2] and Lake Naomi filed with the Board a notice of intention to appeal challenging the assessment of five parcels of land for the 1989 tax year. These assessments were the result of a county-wide reassessment of properties effective for the 1989 tax year.

The Board was asked to designate the five parcels as Use Class 6 which was previously established by the Board for common areas of any development having a zero value for tax assessment purposes. The Board approved the request for Use Class 6 status as to two of the parcels only. Thereafter, assessment appeals for the 1990 tax year were filed by Lake Naomi for eleven additional parcels and by Timber Trails for six parcels and two golf courses. The Board denied these appeals. After hearings, the trial court consolidated the appeals, and on December 4, 1990, reversed and remanded the matter to the Board with instructions that all common areas in question be classified as Use Class 6 and given a zero value for assessment purposes. The trial court, however, denied the Owners' request for costs and reasonable attorney's fees.

■ Appellants initially challenge the trial court's jurisdiction to hear appeals from assessments of the two golf course parcels for the 1989 tax year since these parcels were not listed in the notice of intention to appeal filed for the 1989 tax year and the Board did not rule on these parcels. Section 701(a) of the Law, 72 P.S. § 5453.701(a), provides that the Board shall send a notice to each property owner stating, inter alia, that any person aggrieved by a change of predetermined ratio or by any assessment may appeal to the Board by filing within forty days of the notice a statement in writing of intention to appeal, designating the assessment by which such person is aggrieved. Under Section 701(b), any person aggrieved by any assessment whether or not the value of the assessment has been changed must file an appeal with the

2. Pocono Pines Corporation is the developer of Timber Trails and Lake Naomi Communities. Since commencement of the instant proceedings, Pocono Pines Corporation conveyed its rights in the five parcels to Timber Trails and Lake Naomi.

Board on or before the first day of September setting forth the assessment by which such person is aggrieved. Further, in case of a county-wide revision of assessment, all property owners have the right to appeal new assessment value within thirty days of receipt of the notice pursuant to Section 701(c)(2).

Despite their failure to comply with these statutory provisions for assessment appeals, the Owners contend, and the trial court held, that since the Board had an opportunity to address the assessments of the golf course parcels at the Board's January 3, 1989 meeting which the Owners' counsel attended, the Board's failure to rule on these appeals should not preclude the trial court's de novo review. Established case law does not support this contention.

In *Susquehanna Collieries Co.'s Appeal*, 335 Pa. 337, 342–43, 6 A.2d 831, 833–34 (1939), the Pennsylvania Supreme Court, in rejecting the taxpayer's contention that the statutory appeal to the Board is merely permissive, held:

> While the proceedings on appeal in the court of common pleas are de novo, and evidence may be heard which was not presented to the Board of Revision in order that the court may ascertain the value of the property, ... it has no jurisdiction to entertain an appeal from an assessment unless that assessment was first appealed to the Board of Revision and it should not hear an attack on any part of the assessment which was not considered by the Board.

> A taxpayer aggrieved by an assessment must follow the procedure set forth in the Act; he cannot appeal an assessment directly to the court of common pleas without submitting it to the Board of Revision. (Footnote omitted.)

In the matter sub judice, the Owners' request at the Board meeting to add two assessment appeals for the golf course parcels was neither within the statutory appeal period nor in compliance with the statutory requirement that the taxpayer must set forth in writing the assessment by which he or she feels aggrieved. Moreover, Section 704(a) of the Law, 72 P.S. § 5453.704(a), provides that only a person who has appealed to the Board from an assessment may appeal to the court. Since

the Owners failed to follow the appeal procedures set forth in the Law, the order of the trial court assessing a zero value on the two golf course parcels for the 1989 tax year was entered without jurisdiction, and must be vacated.

The Owners argue that the trial court had jurisdiction under Section 703.3 of the Law, 72 P.S. § 5453.703c, which sets forth procedures for correcting "mathematical or clerical error" in the Board's assessment. The Owners' reliance upon Section 703.3 is misplaced since they are challenging assessments of the golf courses on the ground that these parcels should be classified as Use Class 6 having zero value, rather than seeking correction of any mathematical or clerical errors in the assessments.

The Owners next argue, relying on Section 701(b.1) of the Law, that the trial court had jurisdiction to hear the appeals since Lake Naomi in filing its appeals acted on behalf of Timber Trails. Section 701(b.1) defines the term "person" to include "a group of two or more persons acting on behalf of a class of persons similarly situated with regard to the assessment." Lake Naomi, however, did not allege in its notice of intention to appeal that it was acting on behalf of Timber Trails or any other persons similarly situated. The Owners' "representative appeals" theory, if accepted under the facts of this case, would nullify the statutory requirement that each owner set forth in writing the assessment by which he or she feels aggrieved.

Appellants contend that the trial court erred in finding that the common areas have zero value for tax assessment purposes. In tax assessment appeals, the initial burden is upon the Board to establish a prima facie case with regard to valuations. The burden thereafter shifts to the taxpayer to present sufficient competent, credible and relevant evidence to overcome the prima facie validity of the Board's action. *Monroe County Board of Assessment Appeals v. Miller*, 131 Pa.Commonwealth Ct. 538, 570 A.2d 1386 (1990). It is well settled that actual market value is the price which a purchaser, willing but not obliged to buy, would pay an owner, willing but not obliged to sell, taking into consideration all uses to

which the property is adapted and might in reason be applied. *Appeal of Johnstown Assoc.*, 494 Pa. 433, 431 A.2d 932 (1981).

In *County of Monroe v. Pinecrest Development Corp.*, 98 Pa.Commonwealth Ct. 200, 510 A.2d 1274 (1986), this Court held that the common areas of the development in which individual townhouse owners held an easement appurtenant must be assessed and taxed separately from the townhouses. This Court further noted that the property owners' exclusive rights of easement to the common areas, including exclusive use of the facilities, could diminish the actual market value of the common areas to zero or nominal value because there may not be a buyer willing to purchase the common areas subject to those restrictive easements. On the other hand, the common areas may have value greater than the sum of the easements if the property owners released all or part of their easement rights. The actual market value of the common areas could also change if the property owners modified their easement rights extending privileges to individuals who are not property owners. *Id.* at 204, 510 A.2d at 1276. This principle is based upon the rationale that "the value of an appurtenant easement is inherent in the overall actual market value of the property because the easement influences the price which a willing buyer would pay a willing seller for that property." *Id.* at 206, 510 A.2d at 1277. The value of the appurtenant easements of the property owners are thus assessed as part of the value of their property, and to prevent a possibility of a double taxation, the value of the common areas is reduced by the sum of the value of the easements. *Id.* at 205–6, 510 A.2d at 1277. Finally, the *Pinecrest* Court noted that the actual market value "must be determined on a case-by-case basis because of the likelihood that any recreational development with a common area will have unique characteristics affecting the actual market value of the common area." *Id.* at 204, 510 A.2d at 1276.

At hearing in the matter sub judice, Jeffrey M. Evans, the general manager for Lake Naomi, testified that all of the common areas in question are for the exclusive use of the fee-paying members of Timber Trails and Lake Naomi and are

not available to the general public. However, on cross-examination, he admitted that membership privileges were extended to individuals other than property owners in the Timber Trails and Lake Naomi Communities. The undisputed exceptions to exclusivity of the use of the common areas, which the trial court lists in its opinion, are as follows: (1) approximately twenty-five property owners outside the Communities held memberships since the beginning of the development of the Communities in 1963; (2) employees of Lake Naomi are extended membership privileges as part of their compensation; (3) a small number of people who serve the community in a volunteer capacity, such as members of fire, police and ambulance crews are given membership; and (4) guests of members are allowed to play golf not more than ten times a year with a fee being assessed to the members each time the privilege is extended. The trial court concluded that despite these exceptions, the testimony of the Owners' witness supports the premise that the common areas are still considered to be used exclusively by the property owners of the Communities, rendering the common areas valueless for tax assessment purposes. This conclusion, however, is completely contrary to the undisputed testimony of the Owners' witness.

As this Court noted in *Pinecrest*, where the lot owners had non-exclusive easement rights to the common area golf course which also extended golf membership to individuals not owning lots in the development, the collective value of those property owners' easement did not wholly diminish the actual market value of the golf course. A similar situation is presented in this matter where the evidence shows that the individuals who are not property owners in the Communities are extended membership privileges and charged membership fees.

The Owners misinterpret *Pinecrest* to argue that in determining the actual market value of the common areas, this Court should consider only the legal right of the title holder of the common areas to control and expand the use of common areas beyond the property owners' easements, and that since the Owners are not authorized under the deed to expand the

use of common areas to individuals not owning the property, those areas have a nominal or zero value notwithstanding the admitted exceptions to the use exclusivity. A careful reading of *Pinecrest* indicates, however, that the Owners' contention is without merit.

In *Pinecrest*, "[b]y clauses in the deeds, the owners [had] exclusive easement rights in the common area and facilities." *Id.* at 202, 510 A.2d at 1275. Nonetheless, this Court stated that the common areas could have greater value than the collective value of the property owners' easements if they released or modified their easements to permit the title holder of the common areas to extend privileges to individuals not owning property.[3] Thus, under *Pinecrest*, the property owners' exclusive easement rights provided in the deed alone are not determinative of the actual market value of the common areas because if membership privileges are extended to individuals not owning the property and fees are collected, the value of the common areas may exceed the sum of the value of the property owners' easements. To the extent that *Pinecrest* can be interpreted as the Owners urge, this Court holds that to determine the actual market value of the common areas for tax assessment purposes, all relevant factors including evidence of the actual use exclusivity must be considered beyond the property owners' easement rights under the deed.[4] Accordingly, the order of the trial court must be vacated to the extent that it classified the common areas as Use Class 6 having a zero value for tax assessment purposes, and this matter is remanded for a determination of the actual market value of those areas consistent with this opinion.

3. In *Pinecrest*, because the issue of the assessment of the common areas was not raised on appeal, it was not necessary for this Court to review the Board's determination that the common areas had zero value for tax assessment purposes.

4. Moreover, "the issue in an assessment case is what is proper market valuation and assessment for [a] ... taxing period, not for a prior or subsequent period." *Rieck Ice Cream Co. Appeal*, 417 Pa. 249, 254, 209 A.2d 383, 385–86 (1965). Consequently, should the actual market value of the common areas change in the future due to a change in the status of the actual use exclusivity, it will be necessary to determine the value of the common areas for the future tax year accordingly.

■ In their cross-appeals, the Owners challenge the trial court's denial of their request for costs and reasonable attorney's fees. The Owners rely upon Section 704(e), which provides in pertinent part that "[t]he costs of the appeal and hearing are to be apportioned or paid, as the court may direct: . . . ." Relying further on 42 Pa.C.S. § 2503(9),[5] the Owners contend that they are entitled to costs and reasonable attorney's fees because the tax assessments were arbitrary and had no factual support in that the common areas are contiguous to other properties classified as Use Class 6.

Generally, attorney's fees may be awarded where a party with great resources but little law on his or her side acts in bad faith to protract litigation in an attempt to wear down an opponent to financial exhaustion. *Feist v. Luzerne County Board of Assessment Appeals,* 22 Pa.Commonwealth Ct. 181, 347 A.2d 772 (1975). The instant matter does not present such a situation. As the *Pinecrest* court stated, the actual market value of the common area must be determined on a case-by-case basis because of the likelihood of unique characteristics affecting the actual market value. Moreover, in light of this Court's disposition vacating the trial court's order and remanding for new assessments of the common areas, the trial court's denial of the request for costs and attorney's fees was proper and must be affirmed.

PELLEGRINI, J., concurs in the result only.

### ORDER

AND NOW, this 12th day of August, 1992, the order of the Court of Common Pleas of Monroe County dated December 4, 1990 is affirmed to the extent that it denied the request of Timber Trails Community Association and Lake Naomi Club

---

**5.** 42 Pa.C.S. § 2503(9) provides:
    The following participants shall be entitled to a reasonable counsel fee as part of the taxable costs of the matter:
    . . . .
    (9) Any participant who is awarded counsel fees because the conduct of another party in commencing the matter or otherwise was arbitrary, vexatious or in bad faith.

for costs and reasonable attorney's fees; vacated for the court's lack of jurisdiction as to its assessment of the two golf courses for the 1989 tax year; vacated to the extent that it assessed the remaining common areas at zero value for the 1989 tax year; and vacated as to the assessment of all common areas for the 1990 tax year. This matter is remanded to the trial court for reassessment of the common areas, considering, among other factors, the non-exclusivity of easement rights of the property owners to use these parcels.

Jurisdiction relinquished.

McGINLEY, Judge, concurring and dissenting.

I agree with the majority's conclusions that the common pleas court lacked jurisdiction over the appeals from the assessments of the golf course parcels and that the request for attorney's fees should be denied. However, I respectfully dissent from the majority's conclusion in regard to the assessment of the common areas. In *Pinecrest* the property owners had exclusive rights of easement to the common areas, including exclusive use of the facilities. Although the value of the common areas was not an issue on appeal, the court observed that a zero or nominal actual market value resulting from such exclusivity could change "if the property owners modified their easement rights to permit the title holder of the common area *to extend* privileges to non-property owners." *Pinecrest,* 98 Pa.Commonwealth Ct. at 204, 510 A.2d at 1276 (emphasis added). The majority today correctly endorses this proposition. However, I believe that the majority misinterprets *Pinecrest* to mean that any state of affairs other than absolute exclusivity of use by property owners must translate into some taxable value.

In my view, *Pinecrest* means simply that, because of the possible variety of treatments of the use of common area facilities, each individual situation must be examined closely to determine its effect on value, keeping in mind that "fair market value" means the price that a willing but not obligated seller could obtain from a willing but not obligated purchaser, *Appeal of Johnstown Assoc.,* and keeping in mind that the

assessment applies to things as they are during the current taxing period, not as they speculatively might become, *Rieck Ice Cream Co. Appeal.* Facilities such as lakes, golf courses, swimming pools and the like obviously have substantial intrinsic value *if unburdened.* However, there is no dispute in the present case that the common areas here *are* burdened, and the issue is whether the degree of burden is such as to render the property of no value to a prospective purchaser.

The evidence of record indicates that some property owners outside the developments (fewer than twenty-five) have been dues-paying members since the inception of the development, some other persons are granted fee-waived memberships for special reasons, and members may bring guests to play golf on a limited basis. Based on its view of *Pinecrest,* the majority remands for a determination of value in which "all relevant factors" shall be considered.

I think the trial court already has performed this analysis and that the majority's remand order disregards this fact. The court did not simply note that these parcels are common areas and determine that they must have zero value. Rather, the court analyzed the particular facts and concluded that the limited deviations from absolute exclusivity involved here do not create something of value to a prospective purchaser.

The trial court accurately summarized the discussion in *Pinecrest* of the tax treatment of common areas of developments such as these, with its emphasis on the need for case-by-case analysis of all factors affecting fair market value. The court noted that the evidence supported a finding that the method of valuation employed in the reassessment failed to consider or to make adjustments for easements or restrictive covenants that were appurtenant to the land being valued.[1]

---

1. Automated Valuation Systems (AVS) performed the county-wide reassessment. The trial court cited the testimony of Barry C. Seager, the acting county assessor, including the following:

   Q. So your statement was [AVS] only took into account the comparable sales to establish valuation?
   A. That's correct.

The court noted further that the existence of such easements and covenants is among the *Pinecrest* factors to be considered in determining fair market value. Although the county authority failed to consider these crucial factors in its valuation, the court received both documentary evidence [2] and testimony from Jeffrey M. Evans, the chief operating officer of both Lake Naomi and Timber Trails, which indicated the presence of restrictions. Thus, whereas the county authority had assessed something that never existed, namely, *unburdened* common land and facilities, the trial court was able to begin its analysis by acknowledging the existence of the restrictions.

The trial court turned next to the issue of exclusivity of use. It listed the exceptions to absolute exclusivity that had been developed on the record. The court determined that, for tax purposes, these limited exceptions were not sufficient to justify a conclusion that the common areas should be considered to be other than for the exclusive use of community members.

I agree with this conclusion. From the point of view of a purchaser, it makes no difference that the total number of members includes some few outside the developments—they might just as well be inside. More importantly, as Mr. Evans testified, their numbers cannot increase: "[Y]ou could not purchase a new property today that would be eligible for membership outside the property." N.T. at 71; R.R. 97a.

Q.  Do you know whether they took into account easements or covenants which may affect these parcels, in particular the one we're discussing, and the other four also?
A.  Not that I'm aware of in these particular properties.
Q.  Do your cards reflect that they took those things into account?
A.  There was no adjustments [sic] for any of those.
Notes of Testimony of March 20, 1989 (N.T.), at 26; Reproduced Record (R.R.) 52a. The court noted that AVS's failure to consider restrictions may have been due to the fact that the assessment cards did not indicate the existence of any covenants affecting the property, although the cards had a block specifically for that purpose.

**2.**  The taxpayers introduced into evidence the Articles of Incorporation of Lake Naomi Club, dated 1964 (Plaintiffs' Ex. 1); the bylaws of the Lake Naomi Club, dated 1976 (Plaintiffs' Ex. 2); deed restrictions found in deeds for residential lots in the Lake Naomi subdivision (Plaintiffs' Ex. 3) and the Timber Trails subdivision (Plaintiffs' Ex. 4) and the recorded deeds for the common areas (Plaintiffs' Ex. 5–8). N.T. 20–23; R.R. 46a–49a.

The facts that employees are granted fee-waived memberships as part of their compensation and that some people who perform volunteer service for the community at large are granted memberships as a token of appreciation would likely act as a *disincentive* to a prospective purchaser looking to use the facilities to make a profit. Although the assessment of the golf course is not involved in this appeal, the fact that members may bring guests to play there (with a charge to the member and with no guest permitted to play more than ten times per year) certainly does not equate with access to the course by the public. A member of the public cannot play on that course unless he or she becomes acquainted with a member of Lake Naomi or Timber Trails and receives an invitation. Also, the opportunity to bring guests enhances the value of the course for members, who otherwise would be restricted to playing golf there with their neighbors.

The trial court noted the testimony of the taxpayers' expert that the common areas *would* have marketable value *if* the restrictions were withdrawn, but the court emphasized that the land must be valued as it currently is.[3] I agree. Although the use of the facilities has been extended on a very limited basis to persons not owning property in the developments, the evidence shows that a prospective purchaser would not have the power to extend the use further by opening it to access by the public at large or to any significant portion of the public.[4] The court concluded that, *under the facts of this*

3. The acting county assessor was recalled as a witness for the County and the Board. Following examination by counsel, the trial court questioned him as to the basis of the valuations and the effect of the restrictions. The assessor conceded that the sale of a public golf course would not be comparable to the attempted sale of the golf course involved here and that there were no sales of which he was aware of golf courses restricted in the manner this one is. Notes of Testimony of January 19, 1990, at 115–20; R.R. 141a–46a.

4. The Appellants assert that "[t]here is nothing that would prevent the sale of the golf course to a new owner who could take subject to this use and increase its use by allowing members of the public to use the golf course." Brief of Appellants at 16–17. That statement is simply inaccurate; if it were true then Appellants should prevail. The common areas currently are not open to members of the public generally, and to make them so would require an extensive modification of the existing deeds and covenants.

*case,* the value of the housing lots in the developments had been increased to reflect the full value of the amenities and common areas. The restrictions on those areas and facilities were such as to render them of no value in themselves to a prospective purchaser, and further taxation of the common areas would constitute double taxation. In my view, the trial court performed the analysis required under our endorsement of *Pinecrest* and performed it correctly. Therefore, I see no reason to remand.