617 A.2d 852

CONSOL PENNSYLVANIA COAL COMPANY

v.

The BOARD OF ASSESSMENT APPEALS
OF GREENE COUNTY, Pennsylvania.

The MONONGAHELA RAILWAY COMPANY

v.

The BOARD OF ASSESSMENT APPEALS
OF GREENE COUNTY, Pennsylvania.

Appeal of MONONGAHELA RAILWAY COMPANY and
Consol Pennsylvania Coal Company, Appellants.

Commonwealth Court of Pennsylvania.

Argued May 13, 1992.

Decided Nov. 19, 1992.

Petition for Allowance of Appeal Denied May 7, 1993.

Eugene Illovsky and Joseph A. Katarincic, for appellants.

David C. Cook, for appellees.

Daniel F. Svidro and Glenn R. Toothman, III, for intervenors.

Before CRAIG, President Judge, and DOYLE, PALLADINO, McGINLEY, PELLEGRINI, FRIEDMAN, and KELLEY, JJ.

McGINLEY, Judge.

These consolidated appeals concern an order of the Court of Common Pleas of Greene County (common pleas court) that determined the value of a railroad right-of-way for the years 1989 and 1990 at $23,904,225, directed the Greene County Assessment Office to apply the common level ratio of 22 percent to the foregoing value in order to determine the assessed valuation of the subject property, directed the taxing authorities of Greene County to return a portion of the tax previously paid under protest with interest and directed the Green County Board of Assessment Appeals (Board) to formulate a standard procedure to follow in a tax appeal case consistent with the Local Agency Law, the Sunshine Act, the County Code, and other applicable law.

Monongahela Railway Company (Monongahela) is a common carrier, by rail, in the business of hauling freight since 1903. Consol Pennsylvania Coal Company (Consol) is the owner of various coal properties in Greene County and one of Monongahela's clients. In 1981, Consol began acquiring property between Monongahela's main line and its proposed coal mine in Richhill Township for a railroad right-of-way. Consol paid the initial cost of acquisition for this property and the cost of railway construction. Consol retained the ownership of the track, the structure, the ties, the ballast and the rail. By agreement dated March 30, 1982, Consol and Monongahela agreed that that the property acquired for the construction of the railroad spur (known as "Manor Spur") would be titled in Monongahela's name and be subject to a trust arrangement in which all costs and expenses associated with the property were to be borne by Consol and Monongahela was to be indemnified for any liability or expense. The agreement also bound Monongahela to surrender title to Consol upon demand.

At some point prior to 1990, the Greene County Commissioners conducted an inquiry as to why Manor Spur was not on the tax rolls. Following this inquiry, the Commissioners directed the County Assessor to place Manor Spur on the tax rolls. Consol paid the tax under protest and Monongahela and Consol (collectively, Petitioners) filed appeals with the Board. The Greene County Commissioners sat as the Board and affirmed the decision to tax Manor Spur. Petitioners appealed to the common pleas court, which held a trial *de novo*. The common pleas court found that Consol is the owner of Manor Spur and consequently that the property is not exempt from tax. However, the common pleas court also determined that the Board's valuation of Manor Spur was excessive and ordered the Board to return a portion of the money in the tax escrow account with interest.

■ Our scope of review in a tax assessment appeal is limited to determining whether the trial court abused its discretion or committed an error of law and whether the decision is supported by substantial evidence. *Westinghouse Electric Corporation (R & D Center) v. Board of Property Assessment, Appeals and Review*, 138 Pa.Commonwealth Ct.

30, 587 A.2d 820 (1991). We will first consider the arguments presented by Petitioners.

## PURTA

Petitioners contend that local taxation of Manor Spur is precluded through the operation of the Public Utility Realty Tax Act (PURTA),[1] as PURTA exempts all railroad rights-of-way from local real estate taxation. Petitioners contention is based upon the mention of railroad rights-of-way in PURTA's definition section. PURTA defines "utility realty" as follows:

(3) **"Utility Realty."** All lands, together with all buildings, towers, smokestacks ... without regard for the classification thereof for local real estate taxation purposes, ... located within this Commonwealth and owned by a public utility either directly or by or through a subsidiary, which are used or are in the course of development or construction for use, in the furnishing, including producing, storing, distributing or transporting, of public utility service and which are not subject to local real estate taxation under any law in effect on April 23, 1968: Provided however, That the following specified items *shall be exempt from the tax hereby imposed:*

(i) Easements or similar interests.

(ii) *Railroad rights-of-way* and superstructures thereon.

(iii) Pole, transmission tower, pipe, rail or other lines whether or not such lines are attached to the land or to any structure or enclosure which is physically affixed to the land.

(iv) All lands, together with all buildings, dams, dikes, canals, ... which are used or useful in the furnishing, including producing, storing, distributing or transporting, of hydroelectric power and energy.... (emphasis added.)

PURTA, Section 1101–A(3), 72 P.S. § 8101–A(3).

The tax referenced in the definition is found in Section 1102–A, 72 P.S. § 8102–A, which states: "[E]very public utili-

1. Act of March 10, 1970, P.L. 168, 72 P.S. §§ 3271—32781, amended and placed under the Tax Reform Code, Act of July 4, 1979, P.L. 60 *as amended,* 72 P.S. §§ 8101–A through 8108–A.

ty shall pay to the State Treasurer, through the Department of Revenue, a tax at the rate of thirty mills upon each dollar of the State taxable value of its utility realty at the end of the preceding calendar year." Finally, Section 1104–A, 72 P.S. § 8104–A, provides the following exemption from local real estate tax:

Payment of, *or any exemption,* created as a result of this act, from the tax imposed by the act of March 10, 1970 (P.L. 168, No. 66), known as the "Public Utility Realty Tax Act," or section 1102–A, or section 1103–A, and the distribution to local taxing authorities prescribed by section 1107–A, shall be in lieu of local taxes upon utility realty, as contemplated by Article VIII, section 4, of the Constitution of Pennsylvania: Provided, That in exempting the tax imposed by this article, the Commonwealth shall reimburse local taxing authorities for the property taxes foregone by this act. (Emphasis added.)

■ The common pleas court correctly interpreted these sections of PURTA as exempting railroad rights-of-way from local taxation only if the railroad right-of-way in question is owned by a utility, thereby qualifying as "utility realty." Petitioners argue that the intent of PURTA is specifically to exclude railroad rights-of-way from being considered and treated as utility realty, thereby exempting them from local taxation in all cases, no matter who owns them.

Petitioners' argument that railroad rights-of-way are exempt from local taxation regardless of ownership hinges upon a forced and impractical construction of both Section 1101–A and Section 1104–A. Petitioners argue that railroad rights-of-way are exempt from the definition of "utility realty" through the operation of Section 1101–A, and then are exempt from local taxation through operation of Section 1104–A, by virtue of their specific exclusion from being treated as utility realty for the purposes of this tax.

We do not agree with Petitioners. Scrutiny of the wording of Section 1101–A indicates that railroad rights-of-way are not exempt from the definition of utility realty, as Petitioners argue, but from the imposition of the PURTA tax. The

reference to the exemptions in Section 1104–A does not create an exemption from the tax for items that were previously exempt from the definition of utility realty; rather, it creates an exemption from local taxation for specified items, including railroad rights-of-way. In other words, railroad rights-of-way are properly included in the definition of utility realty, but they are specifically exempt from the tax that is otherwise imposed by Section 1102–A.

Petitioners argue that legislative history supports their construction of the statute and that the case law of Pennsylvania supports their contention that railroad rights-of-way are not commonly considered realty. We hold PURTA to be sufficiently clear to alleviate a need for reliance on legislative history for interpretation, and we believe the Supreme Court's opinion in *American Telephone and Telegraph v. Board of Property Assessment, Appeals and Review of Allegheny County*, 461 Pa. 716, 337 A.2d 844 (1975), is instructive. When enacting PURTA the legislature arrived at a method of taxation whereby local taxing authorities share in the revenue derived from the utilities which also reflects the reality that the territorial presence of a utility tends to reduce the base upon which property taxes are assessed. At the same time, the legislature was aware that local government units in which public utilities are located should not reap a windfall. Justice Roberts noted that the Legislature in enacting PURTA was motivated to provide a tax on *utility property* in response to the adoption of article 8, section 4 of the Pennsylvania Constitution, P.S., by the Constitutional Convention of 1967–68. The article provides:

> The real property of public utilities is subject to real estate taxes imposed by local taxing authorities. Payment to the Commonwealth of gross receipts taxes or other special taxes in lieu of gross receipts taxes by a public utility and the distribution by the Commonwealth to the local taxing authorities for the amount as herein provided shall, however, be in lieu of local taxes upon its real property which is used or useful in furnishing its public utility service.

Given that article 8, section 4, clearly refers to the real property of public utilities, and that the Legislature's enactment of PURTA was an attempt to implement this portion of the Constitution, it is illogical to conclude that PURTA extends an exemption from local tax to property that is not owned by a public utility. We hold that railroad rights-of-way are only exempt from tax under PURTA when owned by public utilities, and thus "utility realty."

■ Alternatively, Petitioners contend that Manor Spur right of way is utility realty because it is owned by Monongahela.[2] The common pleas court concluded that the evidence established that Consol is the equitable owner of Manor Spur, and consequently the property is not utility realty, as contemplated by PURTA. While it is undisputed that Monongahela is the record title holder of Manor Spur, this is not dispositive of ownership for tax liability purposes. The Pennsylvania Supreme Court has held that the owner of real estate cannot transfer the registered title to another, retaining a beneficial interest to himself, and thereby escape liability for taxes. *Appeal of Board of Directors of Owen J. Roberts School District,* 500 Pa. 465, 471, 457 A.2d 1264, 1267 (1983). *See also Great Oaks Building & Loan v. Rosenheim,* 341 Pa. 132, 19 A.2d 95 (1941) (To divest a grantor of tax liability, the transfer must be complete, and the grantee alone must possess the property and receive whatever comes from it).

On the basis of the testimony and exhibits presented, the common pleas court found that Consol possessed sufficient incidents of ownership to be charged as the real or equitable owner of Manor Spur. The common pleas court found that Consol paid for the property acquisition, paid the contractors who built the railway, owned the ballast, ties and rails, and agreed to indemnify Monongahela for all costs of maintaining

---

**2.** PURTA defines a public utility as a person, partnership, association, corporation or other entity furnishing public utility service under the jurisdiction of the Pennsylvania Public Utility Commission, the corresponding regulatory agency, or the United States. Section 1101–A of PURTA. Provision of common carrier service by rail is under the jurisdiction of the PUC. *See* 66 Pa.C.S. § 102, 52 Pa.Code §§ 33.1–33.129.

the railway as well as to reimburse Monongahela for any court costs or taxation. Additionally, and perhaps most importantly, the common pleas court found Monongahela is bound to assign legal title to Consol upon demand. *See* Appellee's Exhibits K, L, M, N; Reproduced Record (R.R.) at 910, 865, 872, 879.[3]

■ We must emphasize that the trial court's findings of fact are accorded great deference in a tax assessment appeal and will not be disturbed in the absence of clear error. *O'Merle v. Monroe County Board of Assessment,* 95 Pa.Commonwealth Ct. 141, 504 A.2d 975 (1986). Upon review of the agreements between Monongahela and Consol, and the testimony, we hold that the common pleas court did not err by assessing Consol for local taxes with regard to Manor Spur.[4]

## Valuation

■ Petitioners also contest the common pleas court's assessment of the value of the property composing Manor Spur. In a tax assessment case, the common pleas court is required to determine the fair market value of the property at issue. *Walnut–Twelve Associates v. Board of Revision of Taxes of City of Philadelphia,* 131 Pa.Commonwealth Ct. 404, 570 A.2d 619 (1990). All matters of credibility and evidentiary weight are within the province of the common pleas court. *Id.* at 412, 570 A.2d at 623.

3. The agreements also provided that if Consol is unable to acquire possession of the property in its own name, Monongahela would exercise its power of condemnation to acquire the land. R.R. at 880.

4. Due to our resolution of this issue we find it is unnecessary to consider the common pleas court's alternative basis for finding that Manor Spur was not entitled to tax exempt basis under PURTA, namely, that the use of the spur primarily for transportation to and from Consol's mine did not amount to provision of common carrier service, so that the spur was not "used or useful" in the provision of public utility service, as required by Section 1101–A of PURTA. In response to Petitioner's argument that the common pleas court erred in this determination we find it sufficient to state that the common pleas court properly referred to the restrictions on public use of Manor Spur in favor of Consol contained in the agreement of October 10, 1984, between Monongahela and Consol, Appellee's Exhibit K; R.R. 912–39.

At trial, Petitioners presented the testimony of appraiser Donald E. York (York). York opined that the current value of Manor Spur calculated with respect to replacement cost for the tax years in question was $5,080,850. Notes of Testimony, August 9, 1990 (N.T. 8/9/90) at 127. In York's opinion the present value of the anticipated income stream of the property for the next thirty years coupled with the scrap or salvage value of the railroad after that time was $5,059,750. N.T. 8/9/90 at 133. Finally, York stated that taking the top 3% of comparable railroad sales in the recent past into consideration, his market estimation of the value of the property was $4,603,-400. N.T. 8/9/90 at 143. York stated on cross-examination that he did not consider Consol's cost of acquisition of the properties now composing Manor Spur in his calculations. N.T. 8/9/90 at 149–50.

The Board presented the testimony and written report of Jeffrey Kern (Kern). Kern testified that he walked the length of the line, measured and photographed it, and found it to be extremely well maintained. Notes of Testimony, August 10, 1990 (N.T. 8/10/90) at 90. While Kern calculated both income and cost based values for the railroad for the pertinent years, Kern testified that he believed the income approach to valuation to be inaccurate when applied to Manor Spur due to the unavailability of actual income or operating cost figures from the railroad. N.T. 8/10/90 at 104. Kern also testified that he believed the market approach was difficult to implement, as the value of a rail line cannot be considered apart from the value of the items it is designed to transport, making inter-line comparisons difficult. N.T. 8/10/90 at 105–106. Kern stated that many of the recent railroad sales in this country were sales of abandoned track rather than functioning, income-producing lines. *Id.* Kern stated that his eventual cost-based valuation was based upon consideration of cost manuals, as well as his physical examination of the track and discussion with people involved in the railroad construction industry. N.T. 8/10/90 at 103, 110.

After consideration of the testimony, the common pleas court determined that Manor Spur's value for the years 1989

and 1990 was $23.9 million. Opinion of the Common Pleas Court of Greene County, December 21, 1990 (Opinion) at 36.[5] This figure falls between Kern's $23,490,000 opinion arrived at by the income method of valuation and his $25,200,000 opinion arrived at by the cost valuation method. The common pleas court found York's testimony as to the cost value of the property incredible as York assigned a $500,000 value to land that cost Consol approximately $7,200,000 to acquire and because he used an unexplained 46% external depreciation figure which is well above the generally accepted accounting standard of 20% depreciation. He also factored in functional obsolescence for a line in current use that cost $34,000,000 to construct only six years earlier.[6] Opinion at 22–23. The court also determined that York's testimony concerning the income valuation method was unreliable because York was unfamiliar with the actual income produced through the operations of Manor Spur. *Id.* Finally, The common pleas court rejected York's opinion of the market value of the property because of York's unfamiliarity with the usage of either Manor Spur or the lines whose sales he used for comparison.

Petitioners contend that the common pleas court placed undue emphasis on the cost method of valuation and misunderstood York's methodology. In support of their argument Petitioners cite several cases that emphasize that market value is intended to be the primary focus of valuation in a tax assessment appeal. *See Appeal of Park Drive Manor,* 380 Pa. 134, 135, 110 A.2d 392 (1955); *Wynne, Inc. Tax Assessment Case,* 434 Pa. 59, 253 A.2d 632 (1969). Petitioners argue that York followed standard valuation practice in determining market rental income value for the property in order to determine income value, rather than the value of the line as it operated

5. The opinion of the common pleas court takes notice of the opinion of "Cole" in discussing Kern's valuation methods. The court apparently confused Kern's name with the name of John W. Cole, Coal Assessor for Greene County, who also testified in the proceedings. Opinion at 24–5. The common pleas court opinion is accurate in its summation of the testimony, however, and Kern is referred to by his right name in other sections of the opinion.

6. Petitioners do not dispute the accuracy of the cost and acquisition figures.

as a coal-hauling unit. While the case cited by Petitioners to support this proposition, *Appeal of Marple–Springfield Center,* 133 Pa.Commonwealth Ct. 406, 576 A.2d 106 (1990), does indicate that market-level rental income is critical in capitalization-of-income valuation for a shopping mall with various retail rental units, we fail to see the relevance of this approach to a railroad spur serving a coal mine, a type of property which is not customarily placed on the rental market in isolation. We are as puzzled as the common pleas court at York's attempt to extrude such a rental value.

Our analysis of the common pleas court's opinion leads us to the conclusion that the court acted appropriately in setting the valuation of a unique sort of property. The common pleas court did not proceed as if it were blind to any valuation method other than cost, as Petitioners claim. On the contrary, the court carefully evaluated all methods suggested by both York and Kern. The decision of the method of valuation—market, cost or income—is within the discretion of the trial judge, so long as all three methods are considered. *Walnut–Twelve,* 131 Pa.Commonwealth Ct. at 413, 570 A.2d at 624.

### Due Process

Petitioners' final argument concerns their right to due process. Petitioners' claim that this right was violated when the Commissioners both ordered Manor Spur placed on the tax rolls and then sat as the Board to hear their appeal. Petitioners contend that by acting in both capacities the Commissioners relied unduly upon the advice of the county solicitor and failed to exercise any independent judgment. However, Petitioners have not made any convincing allegations of ultimate harm resulting to them as a consequence of the Board's actions. As the Board notes in its brief, any improper action at the Board level was cured by the trial *de novo* in the common pleas court.

### ORDER

AND NOW, this 19th day of November, 1992, the order of the common pleas court in the above-captioned matter is

affirmed as to the taxability and valuation of the property known as Manor Spur.

KELLEY, Judge, dissenting.

I respectfully dissent. The sole question in the present controversy is the determination of whether the Manor Spur of some thirteen miles of railroad right-of-way track is exempt from taxation by the local taxing authorities.

There is no dispute that Monongahela is a common carrier utility. The question is whether or not this Manor Spur is operated as part of that utility by Monongahela.

I believe the trial court made an error of law in its interpretation and construction of the respective statutes and regulations.

Monongahela was the title owner and operator of the Manor Spur Line. The Manor Spur Line was a railroad right-of-way available for public use. Recorded title, interest and contracts assured Monongahela of carrying out its duties and responsibilities as a public carrier utility.

I find controlling in this case, the legal determination of the instant facts and controlling law that Monongahela had power of eminent domain for acquisition of the spur right-of-way. *Hughes v. Consol–Pennsylvania Coal Co.,* 945 F.2d 594, 611–13 (3d Cir.1991).

It necessarily follows that because Monongahela has the power of eminent domain for the right-of-way, it is a right-of-way excluded from the local real estate tax.

I would reverse.